Terry N. CHRISTENSEN, Petitioner,

v.

UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF CALIFORNIA, Respondent.

Federal Savings & Loan Insurance Corporation, In Its Capacity As Plaintiff In Case Number CV 86–6780, Real–Party in Interest.

No. 88–7017.

United States Court of Appeals, Ninth Circuit.

April 19, 1988.

Louis R. Miller, Lawrence B. Steinberg, Wyman, Bautzer, Christensen, Kuchel & Silbert, Los Angeles, Cal., for petitioner.

Ronald C. Peterson, Tuttle & Taylor, Inc., Los Angeles, Cal., for real party in interest.

Before KOELSCH, REINHARDT and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Terry N. Christensen petitions this court for a writ of mandamus to compel the district court to vacate its order disqualifying the law firm of Wyman, Bautzer, Christensen, Kuchel & Silbert (Wyman) from representing Christensen in a civil action initiated by the Federal Savings and Loan Insurance Corporation (FSLIC). We issued an order March 8, 1988 granting the requested relief to be followed by this statement of our reasons.

I.

The disqualification order at issue in this petition was entered in a civil suit commenced by the FSLIC as a result of the failure of Beverly Hills Savings and Loan Association (BHSL).[1] The FSLIC com-

---

1. On April 23, 1985, the Federal Home Loan Bank Board determined that BHSL was insol-vent, placed it in receivership, and appointed FSLIC as receiver. FSLIC succeeded to all

plaint alleges mismanagement and a variety of regulatory violations by BHSL's two former management groups, the Fitzpatrick group, and the Amir group. The complaint avers that from 1982 to 1984, the Fitzpatrick group breached its fiduciary responsibility and failed to conduct the operations of the savings and loan in a safe, prudent and lawful manner, entered into unsound lending practices, and committed acts of negligence and negligent misrepresentation. From 1984 to 1985, the Amir group allegedly continued the pattern of mismanagement. Terry Christensen, a senior partner at Wyman, was not named in the FSLIC complaint. He was brought in by the Fitzpatrick group as a third-party defendant because he had served as an outside director of BHSL while the Amir group was in control.

Wyman's involvement with BHSL dates back to 1983. Paul Amir retained Wyman to assist him in his attempt to direct the management of BHSL. In July 1983, Wyman filed suit in state court on Amir's behalf against BHSL and the Fitzpatrick group. Amir sought to prevent the Fitzpatrick group from taking any action that would affect his BHSL shares. Also, he sought a judicial declaration that a prohibition against anyone owning more than 10% of BHSL shares was void. In December, 1983, Fitzpatrick and the BHSL sued Amir in federal court to prevent him from taking control.

The state and federal lawsuits were settled in February and March, 1984, enabling Amir to acquire control. Amir was appointed to the BHSL Board of Directors and then elected Chief Executive Officer in May, 1984. Christensen was appointed to the Board in May, 1984 and served until April 23, 1985.

Wyman continued to represent Amir while he served as a director and officer of BHSL. Also, Wyman performed various legal services for BHSL. Specifically, in 1985 BHSL retained Wyman to investigate wrongdoing by the Fitzpatrick group. Wyman filed suit against the Fitzpatrick group on April 23, 1985 for breach of fiduciary duty, negligence, and waste and diversion of corporate assets.

BHSL was put into receivership on April 23, 1985. FSLIC filed its complaint in the instant action on October 17, 1986. Wyman appeared as counsel of record for Amir and Christensen. On March 13, 1987, FSLIC moved to disqualify Wyman because Wyman had previously represented BHSL and was therefore barred from representing another client in a position adverse to BHSL in substantially related litigation.[2] On October 5, 1987, the district court disqualified Wyman from representing either Amir or Christensen. The district court found that the FSLIC was the successor to BHSL, and that a substantial relationship existed between Wyman's former representation of BHSL and its current representation of Amir and Christensen.

Amir and Christensen sought certification of the order disqualifying counsel for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). On November 17, 1987, the district court issued an order denying certification. Christensen then filed a petition for writ of mandamus with this court.[3]

## II.

■ We determine whether mandamus relief is appropriate in a particular case by

rights, titles, powers and privileges of BHSL. 12 U.S.C. § 1729(c)(1)(B)(2). FSLIC then organized a new federal mutual savings and loan association, Beverly Hills Savings (BHS). BHS purchased BHSL's assets and assumed its liabilities. Subsequently, BHS assigned to FSLIC in its corporate capacity all claims that belonged to BHSL against former BHSL employees and retained professionals. FSLIC in its corporate capacity also purchased from the FSLIC as receiver claims against present or former directors and officers of BHSL. FSLIC brought the civil action at issue in this petition in its

corporate capacity and as owner of the above-described claims.

2. The district court found that the FSLIC is the successor in interest to BHSL for the purpose of asserting this claim. Christensen has not challenged this aspect of the court's order.

3. Although Wyman contends that the district court also erred in disqualifying Wyman from representing Amir, mandamus relief is sought *solely* on behalf of Christensen.

reference to the guidelines set forth in *Bauman v. United States Dist. Court*, 557 F.2d 650 (9th Cir.1977). All factors are not relevant in every case and the factors may point in different directions in any one case. *Unified Sewerage Agency v. Jelco, Inc.*, 646 F.2d 1339, 1344 (9th Cir.1981). These factors are: 1) the party seeking the writ has no other means, such as a direct appeal, of attaining the desired relief, 2) the petitioner will be damaged in a way not correctable on appeal, 3) the district court's order is clearly erroneous as a matter of law, 4) the order is an oft-repeated error, or manifests a persistent disregard of the federal rules, and 5) the order raises new and important problems, or issues of law of first impression. *Bauman*, 557 F.2d at 654–55.

Christensen has established the presence of the first and second factors. An order disqualifying counsel is not a collateral order subject to immediate appeal. *Richardson–Merrell Inc. v. Koller*, 472 U.S. 424, 440, 105 S.Ct. 2757, 2766, 86 L.Ed.2d 340 (1985). And the district court in this case refused to certify the order for immediate appeal.[4] Theoretically, Christensen could appeal the disqualification of his counsel after trial. He could not, however, obtain the desired relief on direct appeal because he seeks to be represented by his chosen counsel *at trial*. Once a new attorney is brought in, the effect of the order is irreversible. *See In re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1357 (9th Cir. 1981), *cert. denied sub nom. California v. Standard Oil Co.*, 455 U.S. 990, 102 S.Ct.

1615, 71 L.Ed.2d 850 (1982). If Christensen and his attorney elected to defy the order and then pursue a direct appeal, they would be subject to contempt sanctions and disciplinary action for ethical violations. *Id.* at 1357. The fifth factor also weighs heavily in favor of issuance of the writ because this court has not addressed whether a law firm that represented a corporate entity in connection with its prior and ongoing relationship with its management should be disqualified in subsequent litigation between the management client and the corporation.

■ The key factor to be examined is whether "we are firmly convinced that [the] district court erred in deciding" to disqualify Wyman from representing Christensen. *In re Cement Antitrust Litig. (MDL No. 296)*, 688 F.2d 1297, 1306–07 (9th Cir.1982), *aff'd mem. sub nom. Arizona v. United States Dist. Court*, 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983). We turn now to this question.[5]

### III.

The district court for the Central District of California has adopted the Rules of Professional Conduct of the California State Bar as its ethical standards.[6] Local Rule 2.5.1. Rule 4–101 provides as follows:

A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference

---

**4.** This court has not decided whether certification under 28 U.S.C. 1292(b) is an appropriate means of reviewing an order granting disqualification. *Cf. Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347 (9th Cir.1988) (order *denying* disqualification does not meet requirements of 1292(b)). In *Richardson*, the Supreme Court in dicta noted that certification may be appropriate. 472 U.S. at 435, 105 S.Ct. at 2763. We need not reach this issue because the district court here refused to certify the order.

**5.** This court has held, in a brief order, that mandamus relief was inappropriate in a petition that sought reversal of a district court order disqualifying counsel. *American Protection Ins. Co. v. MGM Grand Hotel—Las Vegas, Inc.*, 765 F.2d 925, 926 (9th Cir.1985). The order indi-

cated, however, that the *particular circumstances* presented in the petition were insufficient for mandamus relief. *Id.* at 926. Moreover, the court cited *Jelco* with approval. The court in *Jelco* found mandamus an appropriate means of reviewing a disqualification order by applying the *Bauman* factors. *Jelco*, 646 F.2d at 1343–44. Whether mandamus is appropriate in disqualification cases is thus a case-by-case determination.

**6.** Because the Central District of California has expressly adopted the California ethical rules, we must decide whether the district court properly applied the California rules. *Jelco*, 646 F.2d at 1342 n. 1. We express no opinion on the law to apply if the district court had not designated the relevant rules.

to which he has obtained confidential information by reason of or in the course of his employment by such client or former client.

California Rules of Professional Conduct Rule 4–101 (1986). This rule prohibits an attorney from undertaking representation of an adverse party that is "substantially related" to the former representation. *Global Van Lines, Inc. v. Superior Court,* 144 Cal.App.3d 483, 488, 192 Cal.Rptr. 609, 612 (1983).[7]

Christensen claims that the district judge misapplied this rule in two respects. First, Christensen asserts that the substantial relationship test is inapplicable because Wyman could not have received information from BHSL that was not also known to Christensen. Second, Christensen argues that even if the substantial relationship test is used, the requisite "adversity" between BHSL and Christensen is absent.

The "substantial relationship" test seeks to protect and enhance the lawyer/client relationship in all its dimensions. *Trone v. Smith,* 621 F.2d 994, 998 (9th Cir.1980). "[T]he most important facet of the professional relationship served by this rule ... is the preservation of secrets and confidences communicated to the lawyer by the client." *Id.* at 998.

Therefore, as explained by the Second Circuit in *Allegaert v. Perot,* 565 F.2d 246 (2d Cir.1977), the substantial relationship test is not implicated unless the attorney was in a position where he could have received information that his former client might reasonably have assumed the attorney would withhold from his present client. *Id.* at 250; *see also Anderson v. Pryor,* 537 F.Supp. 890, 895 (W.D.Mo.1982); *Neiman v. Local 144, Hotel, Hosp., Nursing Home & Allied Health Servs. Union,* 512 F.Supp. 187, 190 (E.D.N.Y.1981); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 501 F.Supp. 326, 330 (D.D.C.1980), *aff'd sub nom. National Souvenir Center, Inc. v. Historic Figures, Inc.,* 728 F.2d 503 (D.C.Cir.1984), *cert. denied sub nom. C.M. Uberman Enters., Inc. v. Historic Fig-*

*ures, Inc.,* 469 U.S. 825, 105 S.Ct. 103, 83 L.Ed.2d 48 (1984); *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 479 F.Supp. 465, 468–69 (E.D.La.1979); *Moritz v. Medical Protective Co.,* 428 F.Supp. 865, 874–75 (W.D.Wis.1977). In *Allegaert,* the bankrupt Walston corporation sought disqualification of defendant Perot's counsel, the law firms of Weil, Gotshal and Leva, Hawes. The firms had represented the DGF Corporation and the Perot group that managed it. The Perot group had formerly been in charge of Walston. Weil, Gotshal and Leva, Hawes had represented Walston when the Perot group controlled it and had realigned it with DGF. Moreover, after the realignment, the law firms performed work for Walston related to the action in which disqualification was sought. The court did not apply the substantial relationship test because Walston necessarily knew that the information given to the law firms would be conveyed to their primary clients, DGF and the Perot group. *Allegaert,* 565 F.2d at 250.

■ The facts here are very similar. Wyman originally represented a management group that took over a corporation that later went bankrupt and then attempted to continue representation of their original client in litigation with the corporation. BHSL necessarily knew that any information it gave to Wyman would be conveyed to Christensen as a BHSL director and a senior partner in the law firm. Moreover, even if Wyman is disqualified, Wyman is effectively still in this lawsuit through Christensen. He has access to any confidences previously revealed by BHSL. Disqualification would thus be futile in terms of furthering the purpose of the rule.

FSLIC argues that the *Allegaert* rule is inapplicable to this case for two reasons. First, *Allegaert* involved simultaneous representation of the complaining former client and the current client. Here, Wyman did not represent Christensen during the same period that Wyman served as counsel to BHSL. This attempted distinction is irrelevant. The rationale of *Alleg-*

---

7. Because California has adopted the "substantial relationship" test developed and used by the federal courts, we rely in this opinion on federal cases discussing the applicability of this test.

*aert* still applies. Although Christensen did not formally retain Wyman, Christensen served as a director of BHSL and was a senior partner at Wyman. BHSL thus could not have believed that any information it gave Wyman would not be revealed to Christensen.

Second, FSLIC relies on *Marco v. Dulles,* 169 F.Supp. 622 (S.D.N.Y.1959), *appeal dismissed,* 268 F.2d 192 (2d Cir.1959), *overruled on other grounds, Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir.1974) (en banc), for the proposition that a court may not presume that a corporate director knows everything that has been revealed by the corporation to its counsel. In *Marco,* John Foster Dulles and his firm, Sullivan & Cromwell, had represented both a corporation and five of its six directors while the corporation was engaged in certain transactions subsequently attacked by successors in interest to the corporation. The sixth director was a senior partner at Sullivan & Cromwell. In resisting a motion to disqualify the firm from representing the directors in a shareholder derivative action, Sullivan & Cromwell argued that no confidences could have arisen between its various clients because any secrets reposed by the corporation in its general counsel are necessarily known to the directors. The court rejected this argument. The court ruled that although a director has access to corporate information, he may not always avail himself of this opportunity. *Marco,* 169 F.Supp. at 628–29.

Although in *Marco* one of the former directors was a partner at Sullivan & Cromwell, Judge Bryan did *not* discuss the director's access to confidences by virtue of this association. Here, Christensen was both a director and a Wyman partner. Because of both these associations, BHSL could not have thought that any informa-

tion it gave Wyman would be kept from Christensen.[8]

Thus, we adopt the rule of *Alleg-aert* that the substantial relationship test is inapplicable when the former client has no reason to believe that information given to counsel will not be disclosed to the firm's current client. Due to the unique relationship between BHSL, Christensen, and Wyman, there are no BHSL "confidences" that could be inappropriately disclosed by Wyman to Christensen.[9]

## IV.

For the reasons stated above, we grant Christensen's petition for writ of mandamus and vacate the district court's order disqualifying Wyman from representing Christensen in the action brought by the FSLIC.

---

8. This case involves a law firm's representation of an individual who was *both* a director and a law firm partner. Therefore, we express no opinion on the situation where a firm attempts to represent an outside director who is *not* a member of the firm in litigation against the corporation.

9. Because we grant the petition on this ground, we do not reach Christensen's alternative argument that FSLIC and Christensen are not adverse.