**In re Irwin J. JAEGER, Debtor.**

**Bankruptcy No. LA 95-29915 SB.**

United States Bankruptcy Court,
C.D. California.

Aug. 26, 1997.

---

Marc S. Cohen, Harvey R. Friedman and Nancy C. Hsieh, Los Angeles, CA, for Greenberg, Glusker, Fields, Claman & Machtinger, L.L.P.

David Isenberg and Catherine J. Rowlett, Lewis D'Amato, Brisbois & Bisgaard, L.L.P., Merrill R. Francis, Costa Mesa, CA, Sara Pfrommer and Timothy J. Yoo, Sheppard, Mullin, Richter & Hampton, J. Robert Nelson and Susan E.M. Rule, Morrison & Foerster, Los Angeles, CA, for trustee.

Dean P. Sperling, Sperling & Pergande, Santa Ana, CA, for Irwin J. Jaeger.

Theodore W. Graham and Jeffrey K. Garfinkle, Brobeck Phleger & Harrison, L.L.P., for CASC.

AMENDED OPINION GRANTING MOTION TO DISQUALIFY GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP AS COUNSEL OF RECORD FOR DEFENDANTS

SAMUEL L. BUFFORD, Bankruptcy Judge.

## I. INTRODUCTION

Duke Salisbury is the chapter 7 trustee in the administratively consolidated chapter 7 cases for debtors Irwin J. Jaeger, Jaeger Development Corporation, Jaeger Industries, Inc., WMJ Partnership and Irwin Jaeger Partnership ("the Jaeger debtors"). Salisbury brings this motion to disqualify Greenberg Glusker Fields Claman & Machtinger ("Greenberg Glusker") as counsel for defendants in a fraudulent transfer action that the trustee has filed in this case, as well as in other related fraudulent transfer actions that the trustee has recently filed. Greenberg Glusker previously represented both the Jaeger debtors and the other defendants in a state court action substantially related to the fraudulent transfer actions in this case. The interests of the bankruptcy estates of the Jaeger debtors are now directly adverse to the law firm's continuing clients.

. The court holds that the duty of loyalty owing by an attorney to a former client who is now a chapter 7 debtor extends to the chapter 7 trustee, where the debtor is a corporation. In contrast, the duty of loyalty does not extend to an individual chapter 7 debtor who does not join in the disqualification motion. The court finds it unnecessary to rule as to the partnership debtors. The motion to disqualify is granted as to all defendants in the actions brought by the trustee.

## II. FACTS

In 1993 CASC Corp. ("CASC") brought an action in the Los Angeles County Superior Court for the repayment of more than $12.5 million in loans, as well as to avoid certain transfers of assets as fraudulent transfers. The defendants in that action were the Jaeger debtors and a number of other entities that Jaeger had created. Greenberg Glusker represented all of the defendants in that action, including the Jaeger debtors.

In 1995 the Jaeger debtors filed chapter 11 petitions. The automatic stay has prevented CASC from pursuing the state court action against these debtors during the pendency of these bankruptcy cases. The state court action has proceeded against the remaining defendants. Greenberg Glusker ceased representing the Jaeger debtors in the state court litigation upon the filing of the bankruptcy cases, but continues to represent the non-debtor defendants in that action.

On January 13, 1997 all of the chapter 11 cases were converted to cases under chapter 7, and Salisbury was appointed trustee in them.[1] Salisbury subsequently filed an adversary proceeding against Jaeger's wife Patricia Heit Jaeger, Jaeger's business associate Robert McMaster, and Rose Canyon Business Park. The complaint alleges that the defendants participated in a large scheme for the fraudulent transfer of all of Jaeger's assets to third parties. In addition, the trustee has recently filed a second adversary proceeding against all of the defendants (except the Jaeger debtors) that CASC was suing in the state court litigation that is essentially the same as the CASC action. Greenberg Glusker represents the defendants in the present litigation, and apparently intends to represent all of the nondebtor Jaeger entities in the new litigation, unless prohibited from doing so by this court.

The trustee now brings this motion to disqualify Greenberg Glusker in the pending litigations, on the grounds that the firm previously represented the Jaeger debtors in a

1. Because Greenberg Glusker did not represent any of the Jaeger debtors after the filing of their bankruptcy cases, the chapter 11 phase of these consolidated cases plays no role in this decision. The outcome is the same as if the cases had begun as chapter 7 cases. Thus, for the sake of simplification, the court will discuss the cases as if they began as chapter 7 cases.

substantially related action, the state court litigation. CASC joins in this motion.[2]

## III. ANALYSIS

This motion raises two issues. First, does Greenberg Glusker have a conflict of interest that disqualifies it from representing the defendants in the adversary proceeding? Second, does the trustee have an interest in this issue sufficient to have standing to raise this issue?

### A. Applicable Law

The professional responsibility of attorneys practicing before the bankruptcy court in the Central District of California is governed by Local Rule 102(5), which incorporates by reference Local Rule 2.5 of the United States District Court for the Central District of California. Rule 2.5 states:

> 2.5.1 *Rules of Professional Conduct of the State Bar of California—State Bar Act.* Each attorney shall become familiar with and comply with the standards of professional conduct required of members of the State Bar of California, and the decisions of any court applicable thereto. Those statutes, rules and decisions are hereby adopted as the standards of professional conduct of this Court.

> 2.5.2 *Other Standards.* No attorney shall engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein.

Pursuant to Rule 2.5, the CALIFORNIA RULES OF PROFESSIONAL CONDUCT and the State Bar Act,[3] as augmented by Rule 2.5.2 and applicable decisions, govern the conduct of the attorneys in this court. The applicable decisions include both case law and opinions of appropriate bar associations, such as the Committee on Professional Responsibility and Conduct of the California State Bar and the Committee on Professional Responsibility

and Ethics of the Los Angeles County Bar Association.

CASC erroneously asserts that federal courts rely upon the MODEL CODE OF PROFESSIONAL RESPONSIBILITY ("Model Code"), which was adopted by the American Bar Association ("ABA") in 1969 and thereafter adopted by most states, for the rules of professional responsibility. The ABA replaced the Model Code with the MODEL RULES OF PROFESSIONAL CONDUCT ("Model Rules") in 1983. Since 1983, all but a few states have adopted the Model Rules, occasionally with substantial changes.

In 1975 California adopted the CALIFORNIA RULES OF PROFESSIONAL CONDUCT, a very substantially modified version of the Model Code. The California rules were renumbered and very substantially rewritten in 1989, and were rewritten again to a considerable extent in 1992. Local rules in each of the federal district courts in California provide that practice in the federal courts is governed by the CALIFORNIA RULES OF PROFESSIONAL CONDUCT.

### B. Rights of the Jaeger Debtors Absent Bankruptcy

If any of the Jaeger debtors were the moving party on the motion before the court, it would have two separate grounds under the CALIFORNIA RULES OF PROFESSIONAL CONDUCT that would require the disqualification of Greenberg Glusker in this case. It could compel the law firm's disqualification both for representing potentially conflicting interests without consent, and for taking on a representation adverse to it as a former client.

### 1. Lack of Consent to Joint Representation

Greenberg Glusker argues that it undertook no potential conflict of interest in representing the various defendants in the state court action. This is clearly wrong.

---

**2.** Joinder in the motion does not confer any independent status on CASC. It does not thereby become a moving party. Its standing (if any) does not help the trustee in this motion. The only result of joinder is that the court has the discretion to hear CASC's arguments, and to consider its written materials.

**3.** The standards of professional conduct for California attorneys are mostly contained in the CALIFORNIA RULES OF PROFESSIONAL CONDUCT. However, some rules are codified in the State Bar Act. *See* CAL.BUS. & PROF.CODE §§ 6000–6228 (West 1990 & Supp.1996).

The representation of conflicting interests is governed by rule 3–310 of the CALIFORNIA RULES OF PROFESSIONAL CONDUCT, which prohibits the representation of both actual and potential conflicting interests. Rule 3–310 was substantially rewritten in relevant part in 1992, and now provides:

A member shall not, without the informed written consent of each client:

. . .

(C)(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict. . . .

CAL.RULES OF PROFESSIONAL CONDUCT Rule 3–310 (1997). Absent informed written consent, rule 3–310(C)(1) prohibits an attorney from undertaking an engagement for multiple clients in which the clients have a potential conflict of interest, and rule 3–310(C)(2) prohibits such an engagement in which the clients have an actual conflict of interest.

■ The rule against representing conflicting interests is designed not only to prevent the dishonest lawyer from fraudulent conduct, but also to prevent the honest lawyer from having to choose between conflicting duties, rather than to enforce to their full extent the legal rights of each client. *Anderson v. Eaton*, 211 Cal. 113, 116, 293 P. 788 (1930); *In re Sklar*, 2 Cal.St.Bar Ct. Rptr. 602, 616 (1993).

Rule 3–310(C)(2) is not involved in this case. This provision addresses multiple representation where the interests of the clients are in actual conflict. Greenberg Glusker ceased representing the Jaeger debtors as soon as the bankruptcy cases were filed. Thus the motion before the court does not involve the law firm's representation of more than one client whose interests have actually come into conflict.

### a. Potential Conflict of Interest

■ A conflict of interest is actual between jointly represented clients whenever their common lawyer's representation of one may be rendered less effective by reason of the representation of the other. *Spindle v. Chubb/Pacific Indemnity Group*, 89 Cal. App.3d 706, 713, 152 Cal.Rptr. 776, 780–81 (1979); *Sklar*, 2 Cal.St.Bar Ct.Rptr. at 616. A conflict of interest is potential if there is no present actual conflict of interest, but there is a possibility of an actual conflict arising in the future, resulting from developments that have not yet occurred or facts that have not yet become known.

■ Whenever an attorney represents two or more clients in the same matter, there is always a potential conflict of interest that triggers the consent requirements of rule 3–310(C)(1). This rule requires the informed written consent of each client every time an attorney represents two or more clients in the same matter.[4]

Some care is needed in determining what potential conflicts of interest give rise to the obligation to comply with the requirements of rule 3–310(C)(1). In a sense, whenever an attorney has more than one client the attorney has a potential conflict of interest, because there is a potential (however remote) that the interests of those two clients may come into conflict with respect to a matter in which the attorney is representing one of them. However, this kind of potential conflict only occasionally ripens into an actual conflict of interest, and does not normally give rise to the disclosure and consent obligations of rule 3–310(C).

■ More than a remote possibility of a conflict is required before an attorney has an obligation to obtain the informed written consent of each affected client. The American Bar Association states this requirement in the commentary to its general conflict of interest rule as follows:

The critical questions are the likelihood that a conflict will eventuate and, it if it does, whether it will materially interfere

---

4. While this requirement was made explicit in the 1992 amendments to the CALIFORNIA RULES OF PROFESSIONAL CONDUCT, it has been part of the rules for many years. *See Sklar*, supra, 2 Cal.St.Bar Ct.Rptr. at 615–16.

with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.7 cmt. [4] (1995).

 In the state court litigation, where Greenberg Glusker represented several clients including the Jaeger debtors as defendants, the conflict of interest was not merely a remote possibility. When an attorney represents two or more parties in litigation, there is a very real possibility that the interests of the clients in the litigation may at some point diverge and come into conflict. Indeed, this is a classic model of a potential conflict in interest. In consequence, the California rules always require the informed written consent of each client before an attorney may jointly represent two or more clients in the same lawsuit. *Zador Corp. v. Kwan*, 31 Cal.App.4th 1285, 37 Cal.Rptr.2d 754, 759 (1995).

The official discussion to rule 3–310 makes it clear that the joint representation of two or more parties in litigation qualifies as a potential conflict of interest, for the purposes of the consent required by rule 3–310(C)(1). The discussion states:

Subparagraphs (C)(1) and (C)(2) are intended to apply to all types of legal employment, including the concurrent representation of multiple parties in litigation.... In such situations, for the sake of convenience or economy, the parties may well prefer to employ a single counsel, but a member must disclose the potential adverse aspects of such multiple representation and must obtain the informed written consent of the

clients thereto pursuant to subparagraph (C)(2).

CAL.RULES OF PROFESSIONAL CONDUCT Rule 3–310 cmt. (1997) (citation omitted).

 No actual conflict arises that invokes the disclosure requirement of subparagraph (C)(2) until the point when (if ever) the interests of the clients actually diverge. According to the comment, an attorney must obtain a second informed written consent if the potential conflict of interest ripens into an actual conflict:

[I]f the potential adversity should become actual, the member must obtain the further informed written consent of the clients pursuant to subparagraph (C)(2).

*Id.*

There are many ways that the potential conflict of interest resulting from the representation of multiple parties in litigation may ripen into actual conflict. One of the most likely possibilities arises in the context of settlement. This possibility is recognized in an explicit rule, rule 3–310(D), which provides:

A member who represents two or more clients shall not enter into an aggregate settlement of the claims of or against the clients without the informed written consent of each client.

CAL.RULES OF PROFESSIONAL CONDUCT Rule 3–310*(D); see also* MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.8(g) (1995).

**b. Informed Written Consent**

 A lawyer (and his or her law firm[5]) is permitted to undertake the joint representation of more than one client whose interests may be potentially in conflict with the informed written consent[6] of each client. "In-

---

**5.** The general rule is that an attorney's disqualification to represent a client applies to every attorney in the firm where the disqualified attorney practices. In California the rule is stated as follows:

The imputed knowledge theory holds that knowledge by an member of a law firm is knowledge by all of the attorneys in the firm, partners as well as associates.

*Chadwick v. Superior Court*, 106 Cal.App.3d 108, 164 Cal.Rptr. 864, 868 (1980); *accord, Henriksen v. Great American Savings & Loan*, 11 Cal. App.4th 109, 14 Cal.Rptr.2d 184, 187 (1992).

This rule is not articulated in the CALIFORNIA RULES OF PROFESSIONAL CONDUCT. *See Henriksen*, 14 Cal.Rptr.2d at 187. However, California case law has adopted the rule from the DR 5–105(D) of the ABA Model Code. *Chadwick*, 164 Cal. Rptr. at 868. More recently, without reference to the ABA Model Code, California case law has reaffirmed the applicability of this rule. *Henriksen*, 14 Cal.Rptr.2d at 187.

**6.** The Model Rules, adopted in most states, differ from the California rule in that they do not require that the consent to the representation of

formed written consent" is a defined term in rule 3–310, which states:

"Informed written consent" means the client's or former client's written agreement to the representation following written disclosure....

Cal.Rules of Professional Conduct Rule 3–310(A)(2) (1997). "Disclosure" is also a defined term in the rule:

"Disclosure" means informing the client or former client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client.

*Id.* Rule 3–310(A)(1).

The required consent under rule 3–310 is illustrated in *Zador Corp. v. Kwan,* 31 Cal. App.4th 1285, 37 Cal.Rptr.2d 754 (1995), where Zador and its agent Kwan were both sued in litigation arising from a complex real estate transaction. After Kwan requested indemnity from Zador, he agreed to his representation by Zador's law firm, Heller, Ehrman, White & McAuliffe (Heller). At that time Kwan signed a waiver and consent form, which permitted Heller to continue to represent Zador if an actual conflict developed. Indeed, discovery disclosed an actual conflict between Kwan and Zador, and Heller advised Kwan to retain separate counsel. Kwan agreed, and at the same time reaffirmed his consent to Heller's continued representation of Zador. Thereafter, Kwan attempted to disqualify Heller from representing Zador. The Court of Appeals reversed the trial court's grant of the disqualification motion, on the grounds that Kwan's double waiver was effective.

In contrast to Heller's actions in *Zador,* in this case Greenberg Glusker did not obtain any such written consent. *See Bagdan v. Beck,* 140 F.R.D. 650, 659 (D.N.J.1991); *Metro–Goldwyn–Mayer, Inc. v. Tracinda Corp.,* 36 Cal.App.4th 1832, 43 Cal.Rptr.2d 327, 333 n. 9 (1995).

By failing to disclose the potential conflict and to secure the clients' written consent to the joint representation, Greenberg Glusker exposed its clients (including the debtors herein) to sharing confidences without realizing the impact of doing so. In addition, the law firm exposed its clients to expense and delay due to the firm's disqualification from continuing to represent them if an actual conflict developed. Further, the firm exposed its clients to less than full vigor of representation in case an actual conflict occurred. While the jointly represented clients were entitled to consent in writing to these risks, they were deprived of the full written disclosure thereof by the failure of the firm to obtain their written consents. *In re Sklar,* 2 Cal.St.Bar Ct.Rptr. 602, 616 (1990).

The failure to obtain a written consent to a potential conflict of interest, when an attorney undertakes the joint representation on two or more clients, in effect gives a wild card to each of the clients. At any time thereafter during the representation, any of the clients can play the card and require the withdrawal of the attorney (and the attorney's law firm) entirely from the case.

■ Greenberg Glusker argues that there was no potential for adverse interests since all of the defendants were related to Jaeger in some manner. Conflict of interest law recognizes no exception to the potential adversity of parties based on their relationship to each other. The obligations, fiduciary and otherwise, of the entities may vary dramatically. Ownership of entities may change. Commonality of ownership of clients is not a substitute for obtaining the required consents.

The beginning of an attorney's file for a new matter should contain three types of documents to implement these rules. First, there should be the engagement letter, which spells out the scope of the representation that the attorney is to undertake for the client.[7] Second, there should be a memo

---

conflicting interests be in writing. *See* Model Rules Rule 1.7 (1995).

**7.** California Business & Professions Code § 6148 requires that all contracts for the services of an attorney be in writing. The statute sets forth five exceptions: (1) the reasonably foreseeable fees will not exceed $1000; (2) the client is a corporation; (3) the services are rendered in an emergency; (4) the client knowingly states in writing, after full disclosure, that a written contract is not required; (5) the attorney has previously provided and been paid for services of the same general

disclosing the results of the internal conflicts check[8] at the law firm.[9] Third, if the engagement involves the representation of more than one client, the file should contain the informed written consent of each client in the engagement. These documents should be at the beginning of the file, so that there is never any doubt that they have been obtained and preserved, in case any question should later arise about them.

## 2. Representation of Adverse Interests

Outside of bankruptcy, each of the Jaeger debtors could require the disqualification of Greenberg Glusker as counsel of record for the defendants, if this employment were adverse to their own interests.[10] The Jaeger debtors would be entitled to prevail on such a motion, even though Greenberg Glusker has not represented any of them since the filing of the bankruptcy cases.

 An attorney owes two different duties to a former client. First, the attorney has a duty of confidentiality, which prohibits an attorney from using against the former client any information or knowledge acquired by virtue of the representation of that client. Second, the attorney has a duty of loyalty to the former client which prohibits the attorney from undertaking a representation adverse to a former client in a matter substantially related to the prior representation of that client. As the California Supreme Court stated in *People ex rel. Deukmejian v. Brown*, 29 Cal.3d 150, 172 Cal.Rptr. 478, 624 P.2d 1206 (1981):

> An attorney is forbidden to do either of two things after severing his relationship with a former client. He may not do

anything which will injuriously affect his former client in any manner in which he formerly represented him, nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.

*Id.* at 480, 624 P.2d 1206. Similarly, the California Court of Appeals stated in *Zador*:

> The relationship between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity—uberrima fides. Among other things, the fiduciary relationship requires that the attorney respect his or her clients' confidences. It also means that the attorney has a duty of loyalty to his or her clients.

*Id.* 37 Cal. Rptr.2d at 758 (citations omitted). While a Jaeger debtor would not prevail in a disqualification motion on the duty of confidentiality, it would win such a motion based on the duty of loyalty.

### a. Duty of Confidentiality

The duty of confidentiality is stated in rule 3–310(E), which provides:

> A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

CAL.RULES OF PROFESSIONAL CONDUCT Rule 3–310(E); cf. Model Rules Rule 1.9 (1995). The Jaeger debtors have given no written consent to such representation.

---

kind to the client. CAL.BUS. & PROF.CODE § 6148 (West 1990 & Supp.1997). However, all contingent fee contracts must be in writing. *Id.* § 6147 (West 1990 & Supp.1997).

If an exception to the written employment contract applies, the attorney's file is not required to contain a written engagement letter.

8. Many law firms now have a computer data base, on which they rely for initial conflict screening. While this is a highly recommended procedure, it is not generally sufficient, because it is impossible to capture all potential conflicts in a computer database. *See generally* Wendy R.

Liebowitz, *Client Conflict Software: No Panacea*, NAT'L L.J., July 21, 1997, at 1. There is no substitute for the actual circulation of conflicts memos to determine whether they are any disqualifying conflicts that do not appear in the computer database.

9. If a law firm is sufficiently large, it may keep a separate file for conflict clearance memos.

10. There is no evidence that Jaeger's individual interests, as opposed to those of the trustee, are in fact adverse to those of Greenberg Glusker's clients in this case. He has not joined in the motion to disqualify the law firm.

Greenberg Glusker argues that it cannot be disqualified under rule 3–310(E) because it has not received any information from the Jaeger debtors that is confidential as to its remaining clients in the state court litigation or in this case. The law firm bases this argument on California Evidence Code § 962, which provides:

> Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a[n attorney-client] privilege ... as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest).

CAL.EVID.CODE § 962 (West 1995). Section 962 prohibits a party from invoking the attorney-client privilege against another who is represented by the same attorney in a matter of common interest. Where an attorney represents joint clients, confidences must be shared. *Zador*, 37 Cal.Rptr.2d at 759.

In *Allegaert v. Perot*, 565 F.2d 246 (2d Cir.1977), the Second Circuit relied on this analysis to affirm the district court's denial of a motion to disqualify two large New York law firms from representing defendants in preference and fraudulent transfer litigation brought by the trustee. The firms had previously represented both the defendants and the corporate debtor in a variety of transactions, including a "realignment agreement" that approximated a merger. The trustee moved for disqualification, solely on the grounds that the representation of the defendants violated the duty of the attorneys to protect their clients' confidences and secrets. *Id.* at 248. The Second Circuit found that, because of the joint representation, there was no expectation that confidences and secrets of one client would be kept from another. Thus the duty of confidentiality could not provide grounds for disqualification.[11] *Accord, Christensen v. United States District Court*, 844 F.2d 694 (9th Cir.1988).

---

11. Furthermore, New York law (which was applicable in the *Allegaert* case), unlike California law, imposed no obligation to obtain the written consent of clients to the representation of poten-

---

If a Jaeger debtor were to bring a motion outside of bankruptcy to disqualify Greenberg Glusker on the grounds of breach of its duty of confidentiality, it would not be entitled to prevail, because of Evidence Code § 962, *Allegaert* and *Christensen*. Insofar as the trustee stands in the shoes of a Jaeger debtor in bringing the motion before the court, he cannot prevail.

### b. Duty of Loyalty

The conflict of interest rule is based on more than the obligation to protect privileged communications. It is also based on an attorney's duty of loyalty to a former client.

### i. Duty Owing to Present Clients

An attorney owes a duty to represent a client with undivided loyalty. *Yorn v. Superior Court*, 90 Cal.App.3d 669, 153 Cal.Rptr. 295 (1979); Los Angeles County Bar Association Professional Responsibility & Ethics Committee, Formal Opinion No. 435 (1985). In the conflicts context, the duty of loyalty requires a lawyer to represent the interests of a client without being influenced by the interests of the lawyer or others. *See* State Bar of California Standing Committee on Professional Responsibility & Conduct, Formal Opinion No. 1984–83; Los Angeles County Bar Association Professional Responsibility & Ethics Committee, Formal Opinion No. 435 (1985). A lawyer's judgment and advice must be independent of any such influences.

In its commentary to its general rule on conflicts of interest, the ABA states that an attorney's ability to discharge his or her duty of loyalty

> is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client.

---

tial conflicts. The court noted that the trustee had not contended that the attorneys violated the duty to disclose the potential conflict of interest. *Id.* at 251 n. 7.

MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.7 cmt. [4] (1995). For example, the duty of loyalty to a present client prohibits an attorney from undertaking a representation adverse to a client that the attorney presently represents in an unrelated matter.[12] A waiver of the attorney-client privilege does not affect the duty of loyalty for conflict of interest purposes. *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal.App.4th 1832, 43 Cal.Rptr.2d 327, 336 (1995).

### ii. Duty Owing to Former Clients— Substantial Relationship Test

The duty of loyalty to a former client is more limited than the duty of loyalty to a present client. This duty prohibits an attorney from engaging in any act that will injure the former client in matters involving the former representation. *Yorn*, 153 Cal. Rptr. at 298. This rule prohibits an attorney, absent written consent, from representing a party adverse to a former client in a matter substantially related to the prior representation. The duty of loyalty is breached whenever an attorney continues to represent one client in a matter after the termination of joint representation because of a conflict of interest, absent appropriate consent. *Zador*, 37 Cal.Rptr.2d at 758.

At the hearing on the merits of this motion, Greenberg Glusker conceded that the state court action is substantially related to the trustee's avoidance actions. In its motion for reconsideration, Greenberg Glusker contends that this is not so, at least for the non-debtor defendants. This position is unsupportable. Where a dispute arises between parties in a matter where they are jointly represented by the same attorney, there is inherently a substantial relationship between the new dispute and the joint representation. *Zador Corp. v. Kwan*, 31 Cal. App.4th 1285, 37 Cal.Rptr.2d 754, 759 (1995).

12. The duty of loyalty to a present client is articulated in rule 3-310(C)(3), which provides:
A member shall not, without the informed written consent of each client:
. . .
(3) Represent a client in a matter and at the same time in a separate matter accept as a

Greenberg Glusker relies on *Allegaert v. Perot*, 565 F.2d 246 (2d Cir.1977), in arguing that the substantial relationship test is inapplicable because no client confidences are at stake. This reliance is misplaced. The court in *Allegaert* addressed only the issue of confidential communications, because the bankruptcy trustee did not raise the issue of the duty of loyalty on appeal. In contrast, in this case the trustee explicitly relies on the duty of loyalty as a ground for disqualification. Thus the court must consider this duty separately. *Accord, Koch v. Koch Industries*, 798 F.Supp. 1525, 1534-35 (D.Kan.1992) (distinguishing *Allegaert* on the grounds that the trustee did not raise on appeal the issue of the duty of loyalty).

Greenberg Glusker also relies substantially on *Bagdan v. Beck*, 140 F.R.D. 660 (D.N.J. 1991) in support of its position. *Bagdan* is wrongly decided. It involved the interpretation of the New Jersey version of rule 1.9 of the Model Rules. Like the California rule, the New Jersey version of the Model Rule prohibited an attorney, after representing a client, from (1) representing another client without consent in the same or a substantially related matter in which the new client's interests are materially adverse to the former client, or (2) using confidential information to the disadvantage of the former client. *Id.* at 665. Even though *Allegaert* had based its decision only on the second of these grounds (as provided in Canon 4 of the New York version of the Model Code), the court in *Bagdan* improperly followed this reasoning in interpreting the first requirement as well. In contrast, the ABA official commentary to Rule 1.9 specifically states:

> The second aspect of loyalty to client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires

client a person or entity whose interest in the first matter is adverse to the client in the first matter.
CAL.RULES OF PROFESSIONAL CONDUCT Rule 3-310(C)(3) (1997).

abstention from adverse representation by the individual lawyer involved. . . .

Model Rules Rule 1.9 cmt. [11] (1995).[13]

In this court's opinion, the court in *Bagdan* simply made a mistake in interpreting the New Jersey rule. In consequence, this court refuses to give the *Bagdan* decision any weight on this point. *Accord, Waldschmidt v. Compcare Health Services Ins. Corp. (In re Peck Foods)*, 196 B.R. 434, 439 (Bankr. E.D.Wis.1996).

Greenberg Glusker also relies on *Christensen v. United States District Court*, 844 F.2d 694 (9th Cir.1988), which followed *Allegaert* in reversing the trial court's disqualification of Wyman, Bautzer, Christensen, Kuchel & Silbert from representing its partner Terry Christensen in litigation brought by the FSLIC arising out of the failure of Beverly Hills Savings & Loan Association (BHSL). The firm had represented a management group that had taken over BHSL two years before it was closed by the FSLIC, and had represented BHSL in a variety of matters after the takeover.

The *Christensen* decision was based solely on rule 4–101 of the 1975 version of the CALIFORNIA RULES OF PROFESSIONAL CONDUCT,[14] which stated the duty not to use knowledge or information against a former client that was obtained in that relationship. Like *Allegaert*, the Ninth Circuit in *Christensen* gave no consideration to the duty of loyalty to a former client, which was then codified in rule 5–102, apparently because this issue was not raised on appeal. Thus *Christensen* is not helpful on this issue.

■ Greenberg Glusker requests that it be permitted to represent at least those enti-

ties in the pending litigation that it did not represent in the prior state court litigation. The substantial relationship test prohibits this form of relief. The law firm's disqualification extends to any new representation that is substantially related to its prior representation of the corporate debtors in this case. This includes all of the defendants in the litigation brought by the trustee that is here at issue.

The court concludes that it would be required to grant a motion brought by a Jaeger debtor, outside bankruptcy, to disqualify Greenberg Glusker based on its continuing duty of loyalty to the Jaeger debtors as its former clients. Disqualification would be required on the grounds that the law firm's continued representation of parties who were codefendants with Jaeger in the state court litigation, both in that litigation and in the litigation in this case, violates the law firm's duty of loyalty to its former clients, and that the Jaeger debtors have given no written consent to this representation.

### C. Trustee's Standing

The court has found two grounds on which the Jaeger debtors could require the disqualification of Greenberg Glusker, if they had brought the motion now pending before the court. The court must now consider whether the trustee has standing to make a disqualification motion based on either of the two grounds that the Jaeger entities would have to disqualify the law firm.

■ The trustee claims that he is entitled to make this motion because he stands in the shoes of the Jaeger debtors, and this status permits him to make any disqualification motion that the Jaeger debtors could make.[15]

---

13. The ABA comments apply in interpreting the New Jersey version of the Model Rules. N.J.RULES OF COURT *Introduction* (West 1996).

14. Rule 4–101 was contained in the 1975 version of the California Rules of Professional Conduct. The 1975 set of rules was renumbered and substantially revised in 1989. In the 1989 revision, rules 4–101 and 5–102 were combined and replaced with what is now rule 3–310. Rule 3–310 was substantially rewritten again in 1992.

15. The trustee also argues that he has the right of Jaeger's former client status, because he inherits ownership and control of all of the intangible

property of the estate. The trustee correctly asserts that he inherits essentially all of Jaeger's property. *See* Bankruptcy Code § 541, 11 U.S.C.A. § 541 (West 1993) (defining property of the bankruptcy estate).

However, the right to assert a conflict of interest against former counsel of the debtors is not a property interest of the estate. Such an interest is not a property right at all. It is a right that inheres in the relationship of attorney and client, and has no existence outside of that relationship. This right does not fall within the scope of section 541 (defining property of the estate), because it cannot be liquidated for the benefit of

If the trustee can stand in the shoes of the Jaeger debtors as to either of the two grounds on which the debtors could disqualify the law firm, the trustee's motion must be granted.

As we have seen, conflict of interest rules are grounded on both an attorney's duty of loyalty and on the attorney's duty to preserve a client's confidences and secrets. Because Greenberg Glusker was not privy to any confidences or secrets as between the Jaeger debtors and its present clients in this case, any disqualification motion must rest on a violation of its duty of loyalty both to the Jaeger debtors and to its other clients. Indeed, we have seen that only the duty of loyalty could support a motion by a Jaeger debtor itself for disqualification. Thus this motion turns on whether Greenberg Glusker's duty of loyalty to the Jaeger debtors passed on to the trustee upon the filing of their chapter 11 bankruptcy cases, and the subsequent conversion of the cases to chapter 7 cases.

The court holds that prepetition counsel's duty of loyalty to an individual who files a chapter 11 case does not extend to the chapter 7 trustee, where the law firm has not represented the chapter 11 estate. The trustee, as representative of the chapter 7 estate, is a fundamentally different entity from the prepetition debtor whom the law firm represented. However, the duty of loyalty does extend to the corporate Jaeger debtors. Thus the firm must be disqualified insofar as it continues to represent entities that it represented jointly with the corporate Jaeger debtors.

### 1. Corporations

■■■ The duty of loyalty that an attorney owes to a former client in substantially related matters extends to the chapter 7 trustee of a corporation. With respect to corporations, this case is similar to *CFTC v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). The court finds that *Weintraub*, while not controlling, provides a helpful method of analyzing this issue.

In the *Weintraub* case, Gary Weintraub had been the prepetition legal counsel for Chicago Discount Commodity Brokers ("CDCB"). CDCB's bankruptcy filing resulted from a consent decree between its sole director and officer and the Commodity Futures Trading Commission, pursuant to which a receiver was appointed to file a chapter 7 bankruptcy case. The receiver was appointed as the chapter 7 trustee, and gave the Commission a written waiver of any attorney client privilege applying to any prepetition communications between the corporation and Weintraub. The United States Supreme Court determined that the chapter 7 trustee of a corporate debtor had the power to give this waiver of the corporation's attorney-client privilege with respect to prepetition communications.

The Supreme Court held in *Weintraub* that, because the attorney-client privilege is controlled by a corporation's management outside of bankruptcy, the privilege should be controlled in bankruptcy by the actor whose duties most closely resemble those of management. *Id.* at 351–52, 105 S.Ct. at 1992–93. The Supreme Court found that the trustee in a chapter 7 case has this role, because the trustee has extensive powers and responsibilities, while those of the prepetition management are severely limited after the filing. *Id.* at 352, 105 S.Ct. at 1992–93. In consequence, the Court found that prepetition management should not exercise the traditional management function of controlling the corporations's attorney-client privilege after the bankruptcy filing. *Id.* at 353, 105 S.Ct. at 1993.

■■■ When control of a corporation passes to new management, the authority to assert or waive the corporation's rights in relation to its legal counsel passes to the new management. *Cf. id.* at 349, 105 S.Ct. at 1991. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, are entitled to assert the corporation's rights. These rights include the right to require the corporation's attorney to respect the attor-

creditors. If the trustee inherits such a right from Jaeger, the source for the right must be

found elsewhere.

ney's duty of loyalty to the corporation, and the right to assert or waive the attorney's duty to protect all information relating to the representation of the corporation. *Cf. id.* Displaced managers may not assert these rights over the wishes of new management. *Id.*

■ In bankruptcy the rights of a corporation with respect to its present or former counsel are controlled by the trustee, unless the result interferes with policies underlying the bankruptcy laws. *Id.* at 351–52, 105 S.Ct. at 1992–93. The trustee receives this power, because the trustee is the actor in bankruptcy whose duties most closely resemble those of a corporation's management. *Id.* This result applies in a chapter 7 case, as well as in a chapter 11 case where a trustee has been appointed. *Id.* at 352, 105 S.Ct. at 1992–93.

■ In contrast, after a bankruptcy trustee is appointed, the powers of a corporate debtor's directors are severely limited. Their role is limited to turning over the corporation's property to the trustee, and to providing certain information to the trustee and creditors. *Id.* The trustee assumes complete control of the business, and the corporate directors are completely ousted. *Id.* at 352–53, 105 S.Ct. at 1992–93. Given that the corporation debtor's former management retains virtually no management powers after the filing of a chapter 7 case, the trustee should control the right to demand or waive the duty of loyalty of present or former counsel for the corporation, unless this would be inconsistent with policies of the bankruptcy law. *Cf. id.* at 353, 105 S.Ct. at 1993.

In *Weintraub* the United States Supreme Court found no federal interests that would be impaired by the trustee's control of the attorney-client privilege with respect to pre-bankruptcy communications. *Id.* Likewise, this court finds no federal interest that would be impaired by the trustee's control of the duty of loyalty owing by the corporation's former legal counsel.

Greenberg Glusker relies heavily on *Bagdan v. Beck,* 140 F.R.D. 660 (D.N.J.1991), in its defense. However, the court in *Bagdan*

did not consider the duty of loyalty, which is the crucial inquiry in this case. In addition, the court in *Bagdan* relied on the confidentiality analysis of *Allegaert* and *Christensen,* and thus is not helpful in the present case.

### 2. Individuals

■ The duty of loyalty owing to Jaeger individually that results from Greenberg Glusker's prepetition representation of him does not run to the trustee or the chapter 7 estate. Where the chapter 7 debtor is an individual, the court finds that the trustee and the estate are fundamentally separate from the prepetition debtor, for the purposes of the duty of loyalty. This is true notwithstanding the fact that the bankruptcy case began as a chapter 11 case with the debtor in possession, because Greenberg Glusker never represented Jaeger or his bankruptcy estate after the bankruptcy was filed.

In *Weintraub* itself the Supreme Court directly addressed the impact of its holding where the chapter 7 debtor is an individual, and not a corporation. Such a case would be different, the Court stated, and would not be controlled by its rule for corporations. *Id.* at 356, 105 S.Ct. at 1994–95. The reason for this difference, the Court stated, is that a corporation must act through agents, and in a chapter 7 bankruptcy the agent for the corporation is the trustee. *Id.* This is the person who should exercise the attorney-client privilege for a corporation after its chapter 7 filing, according to the Supreme Court. *Id.* As to an individual, the Supreme Court stated:

> An individual, in contrast, can act for himself; there is no "management" that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be under some theory different from the one that we embrace in this case.

*Id.* at 356–57, 105 S.Ct. at 1995.

Lower courts have found this difference decisive, and have held that a bankruptcy trustee does not inherit the right to waive the attorney-client privilege with respect to prepetition communications, if the debtor is an individual. *See, e.g., McClarty v. Gudenau,* 166 B.R. 101, 101–102 (E.D.Mich.1994);

*In re Hunt,* 153 B.R. 445, 450–454 (Bankr. N.D.Tex.1992). The court finds the *Weintraub* analysis unhelpful on this issue.

If Greenberg Glusker had represented Jaeger while he was a debtor in possession in the chapter 11 case, the outcome would be different. In *Waldschmidt v. Compcare Health Services Ins. Corp. (In re Peck Foods),* 196 B.R. 434 (Bankr.E.D.Wis.1996), the law firm represented an individual prior to his filing of a bankruptcy case. The law firm continued to represent the debtor afterwards as a chapter 11 debtor in possession, and it ended the representation only upon conversion of the case to a chapter 7 case. The law firm then sought to represent a defendant in a preference action brought by the chapter 7 trustee. The court held that the trustee qualified as a former client of the law firm, because the chapter 7 entity is the same as the chapter 11 entity that the law firm represented. *Id.* at 439.

■ As to Jaeger, *Peck* differs from this case in a crucial respect. As Judge McGarrity stated in her opening line of the opinion in that case:

> This case raises the issue of whether the law firm that represented a chapter 11 debtor can represent the defendant in a preference action brought by the chapter 7 trustee after the case is converted.

An attorney who represents a chapter 11 debtor in possession has a fiduciary duty to the estate that encompasses both the duty of loyalty and the duty to protect confidential and privileged information. This duty continues after the conversion of the case to a case under chapter 7.

In contrast, no such duty arises merely from the representation of a prepetition debtor who is an individual. In the present case Greenberg Glusker's representation of Jaeger before bankruptcy ended upon his bankruptcy filing. Thus the law firm never had any duty of loyalty to his estate. Its duty of loyalty continued to run to Jaeger personally after his bankruptcy filing.

### 3. Partnerships

The rights of the chapter 7 bankruptcy trustee to enforce legal counsel's duty of loyalty for a partnership are less clear than they are for a corporation. While some partnerships may undergo management changes without changing their effective structures, others are uniquely tied to the efforts or resources of individual partners. Thus some are more like corporations, and the foregoing analysis relating to corporations applies to them, also. Others, in contrast, are more like individuals, who continue to exist apart from the partnership bankruptcy. The court perceives no general rule applicable to partnerships that permits a determination of whether Greenberg Glusker must be disqualified to represent its continuing clients in opposition to the partnership debtors.

In addition, the court lacks sufficient knowledge about the debtor partnerships in this case to make this determination. These cases are assigned to Judge Vince Zurzolo in this court. The motion was assigned to me when Judge Zurzolo recused himself, because his wife is a partner with Greenberg Glusker, and Judge Zurzolo practiced at the firm himself prior to his appointment to the bench. The record on this motion is thus thinner than it would normally be in this kind of case. Because of the foregoing determination that the trustee, wearing the hat of the debtor corporations, is entitled to require Greenberg Glusker's disqualification, the court does not reach the issue with respect to the partnerships.

### IV. TRUSTEE DELAY

■ Greenberg Glusker argues that the trustee has waived his right to bring this motion by delaying while the law firm continued to represent its nondebtor clients. The court is not persuaded.

These consolidated cases were converted to cases under chapter 7 on January 13, 1997. The trustee filed this motion on April 30, 1997. While there were a few proceedings involving the law firm in the interim, the court does not find that the passing of 3½ months from the trustee's appointment to the filing of the motion was inordinate. During this time the trustee had to be notified of his appointment, had to select and obtain the appointment of counsel, and had to learn about the case. Given these facts, the court

**594**

does not find that 3½ months was a sufficient delay to constitute a waiver of the right to bring this motion.

## V. CONCLUSION

The court holds that, where a law firm has jointly represented a corporation and other clients before the entities filed bankruptcy cases (but not thereafter), a trustee appointed in the corporation's chapter 7 case stands in the shoes of the corporation as a former client of the law firm for the purposes of bringing a motion to disqualify the law firm on the grounds of a conflict of interest arising out of that representation. However, the chapter 7 trustee does not stand in the shoes of an individual debtor who was also jointly represented by the law firm.

The court further finds that the law firm breaches its duty of loyalty to these former clients by continuing to represent the non-debtor clients in substantially related litigation, absent consent. Under California law, this consent must be in writing. In consequence, Greenberg Glusker must be disqualified from this representation.

For the foregoing reasons, the motion to disqualify Greenberg Glusker as counsel for all defendants in the adversary proceedings in this case is granted.