Delmer MILLER, Individually and as the Successor in Interest to the Estate of Tyisha Miller, David Miller, Jr., Individually and as the Successor in Interest to the Estate of Tyisha Miller,

v.

Mike ALAGNA, Paul Bugar, Dan Hotard, Wayne Stewart, Greg Preece, City of Riverside and Does 1 through 10, Inclusive.

No. ED–CV99–0176RT (RZX).

United States District Court,
C.D. California.

July 18, 2000.

Gregory G. Petersen, Delores Marie Giacometto, Petersen Law Firm, Costa Mesa, CA, for defendants, cross-claimants and counter-claimants Paul Bugar and Dan Hotard.

Theresa J. Macellaro, Christensen, Miller, Fink Jacobs, Glaser, Weil & Shapiro, Los Angeles, CA, Stan Tokio Yamamoto, Gregory P. Priamos, Riverside City Attorney, Riverside, CA, for City of Riverside.

Louis R. Miller, Theresa J. Macellaro, Christensen, Miller, Fink Jacobs, Glaser, Weil & Shapiro, Los Angeles, CA, Charles A. Goldwasser, Corey W. Glave, Law Offices of Goldwasser & Glave, Los Angeles, CA, for defendant Greg Preece.

ORDER GRANTING DEFENDANTS PAUL BUGAR'S AND DAN HOTARD'S MOTION TO DISQUALIFY CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO AND THE CITY ATTORNEY'S OFFICE OF THE DEFENDANT CITY OF RIVERSIDE

TIMLIN, District Judge.

The Court, the Honorable Robert J. Timlin, has read and considered: 1) Defendants, Cross–Claimants, and Counter–

Claimants Paul Bugar and Dan Hotard ("Bugar" and "Hotard")'s motion for preliminary injunction and/or motion to disqualify Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP ("Christensen, Miller") and the City Attorney's Office of the City of Riverside ("City Attorney's Office"), 2) Defendant Greg Preece ("Preece") and Defendant City of Riverside ("the City") (collectively, "Defendants")'s opposition to Bugar and Hotard's motion, and 3) Bugar and Hotard's reply. Based on such consideration, the Court concludes as follows:

## I.

### BACKGROUND

Tyisha Miller was shot and killed by City police officers on December 28, 1998 while she was seated in a parked car at a gas station. In anticipation of a civil suit being filed by Tyisha Miller's survivors, the City in January 1999 retained Christensen, Miller to defend the City and the individual police officers involved in the shooting. On May 18, 1999, Delmer Miller and David Miller ("Tyisha Miller's parents"), individually and in their capacity as the successors in interest to the estate of Tyisha Miller, initiated this action against City police officers Bugar, Hotard, Mike Alagna ("Alagna"), Wayne Stewart ("Stewart"), and Preece (collectively, "the officers") and the City.

In the first amended complaint ("FAC"), Tyisha Miller's parents set forth a cause of action against the City and the individual officers, including Bugar and Hotard, for the wrongful death of Tyisha Miller based on assault and battery ("first wrongful death claim") and negligence ("second wrongful death claim"). Their wrongful death claim is also based on negligent hir-

ing, training and retention ("third wrongful death claim") against the City and Preece.

The FAC contains the following state survival causes of action brought by Tyisha Miller's parents on behalf of Tyisha Miller's estate: 1) assault and battery, against all defendants except Preece, 2) intentional infliction of emotional distress, against all defendants, 3) negligence, against all defendants, and 4) negligent hiring, training, and retention, against the City and Preece.

The FAC further contains federal claims against all the defendants for: 1) violations of constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution based on Tyisha Miller's death under 42 U.S.C. § 1983 ("Section 1983"); 2) conspiracy with racial animus in violation of civil rights under 42 U.S.C. § 1985(3) ("Section 1985(3)"); and 3) neglect to prevent civil rights violations in violation of civil rights Section 1985(3) and 42 U.S.C. § 1986 ("Section 1986").

In January 1999, the City Attorney's Office and Christensen, Miller were retained to represent Bugar and Hotard in this action.

On July 12, 1999 the City separated Bugar and Hotard's employment. Alagna and Stewart's employment was terminated on the same date. Preece's employment was terminated on September 1, 1999. In July 1999, Bugar and Hotard retained the Petersen Law Firm to defend them in this action. Between July and October 12, 1999, Bugar and Hotard notified Christensen, Miller that they had retained separate attorneys and no longer wanted Christensen, Miller to represent them.[1] The Peter-

---

1. Bugar and Hotard contend that they gave notice to Christensen, Miller in July 1999, and

Christensen, Miller counters that they did not have notice until October 1999. However, it

son law firm filed its entry of appearance on August 16, 1999 for Bugar and Hotard. On October 13, 1999 Christensen, Miller withdrew as their counsel.

Neither the City Attorney's Office nor Christensen, Miller informed the individual officers, including Bugar and Hotard, of a potential or actual conflict of interest between the City and the individual officers whom they jointly represented until after Bugar and Hotard were separated from employment by the City.[2] After being so notified, Bugar and Hotard refused to sign any agreement as proposed by the City Attorney's Office and Christensen, Miller regarding conflicts of interest or a joint defense.

## II.

### *ANALYSIS*

Bugar and Hotard contend that Christensen, Miller should be disqualified from representing any party to this action and the City Attorney's Office should be disqualified from representing them and Alagna, Preece, and Stewart. They argue that Christensen, Miller and the City Attorney's Office, by reason of the civil rights claims against the City and the individual officers, including Bugar and Hotard, had a potential conflict of interest by representing multiple parties, whose interests may be adverse. Consequently, Christensen, Miller and the City Attorney's Office should have obtained Bugar's and Hotard's informed written consent to such multiple representation before they began such

representation. Christensen, Miller and the City Attorney's Office do not dispute the fact that they never obtained the informed written consent of Bugar and Hotard, nor that they represented Bugar and Hotard and the other defendants from January to July of 1999. Rather they argue that there was no obligation to obtain Bugar and Hotard's informed written consent because there was no conflict of interest between Bugar and Hotard and the City, and that a potential conflict only arose, if at all, when the officers, including Bugar and Hotard, were fired. Christensen, Miller and the City Attorney's Office further argue that a potential conflict of interest does not justify their disqualification.

### A. Lack of Informed Written Consent

Pursuant to Local Rule 2.5.1, the United States District Court for the Central District of California ("Central District Court") adopts the California Rules of Professional Conduct and the decisions of any applicable court. *See Blecher v. Northwest Airlines, Inc.*, 858 F.Supp. 1442, 1451 (C.D.Cal.1994). California Rule of Professional Conduct Rule 3–310(C)(1) ("Rule 3–310(C)(1)") prohibits an attorney from representing multiple clients when those clients have a potential conflict of interest unless the attorney first obtains the informed written consent of the clients.[3]

 "The rule against representing conflicting interests is designed not only to prevent the dishonest lawyer from fraudulent conduct, but also to prevent the hon-

---

is unnecessary for the Court to resolve this factual dispute for the purposes of deciding this motion.

**2.** In a letter to defendants Bugar, Hotard, Alagna, Stewart, and Preece dated August 3, 1999, Christensen, Miller acknowledged that there was a potential conflict of interest.

**3.** California Rules of Professional Conduct Rule 3–310 provides, in pertinent part:

A member shall not, without the informed written consent of each client:

. . .

(C)(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict.

est lawyer from having to choose between conflicting duties, rather than to enforce to their full extent the legal rights of each client." *In re Jaeger,* 213 B.R. 578, 584 (C.D.Cal.1997), *citing Anderson v. Eaton,* 211 Cal. 113, 116, 293 P. 788 (1930); *see also In re Sklar,* 2 Cal.St. Bar Ct.Rptr. 602, 616, 1993 WL 518336 (1993). A potential conflict of interest exists when "there is a possibility of an actual conflict arising in the future, resulting from developments that have not yet occurred or facts that have not yet become known." *Id.* A conflict is actual if the representation of one client may be rendered less effective by reason of the shared attorney representing the other client. *See id.*

The duty to avoid conflicts arises at the beginning of the representation. *See Sklar,* 2 Cal. State Bar Ct.Rptr. at 615–616, 1993 WL 518336 (noting that "the duty to avoid conflicts ... arises at the outset of the employment when there has been little if any opportunity for investigation into the merits of the case.") Whether the attorney believes there is no conflict of interest between joint clients is irrelevant. *See id.* at 616, 1993 WL 518336 (rejecting the attorney's argument that he did not need to obtain the informed consent of his clients when he believed there was no conflict between them). As the Central District Court has noted: "[b]ecause obtaining a written waiver requires little effort, informs and protects clients, and avoids costly evidentiary and credibility disputes, the rule is inflexible." *Blecher,* 858 F.Supp. at 1454 (commenting on Rule 3–310(C)'s predecessor, Rule 5–102(B)).

In part, the rule requiring the informed written consent when there is a potential conflict of interest between clients is designed to protect clients from sharing confidences without realizing the potential impact or consequences of doing

so. *See Sklar,* 2 Cal. State Bar Ct.Rptr. at 616, 1993 WL 518336. In California there is a "joint client" or "common interest" exception to the attorney-client privilege. When "two or more clients have retained or consulted a lawyer upon a matter of common interest ... neither may claim the privilege in an action by one against the other." *Zador Corp. v. Kwan,* 31 Cal. App.4th 1285, 1294, 37 Cal.Rptr.2d 754, 759 (1995) (citations and internal quotations omitted). Therefore, the failure of an attorney to disclose a potential conflict of interest and to obtain the clients' written consent exposes clients to the risk of sharing confidences without realizing the impact of doing so. *See Jaeger,* 213 B.R. at 586. Accordingly, the informed consent by clients is critical to any joint representation, and it is the absence thereof or the scope of any such informed consent which determines whether an attorney should be disqualified. *See id.* at 1294–1295, 37 Cal. Rptr.2d 754.

The failure of an attorney to obtain the informed written consent of clients when there is a potential conflict of interest is grounds for disqualification by either client. As *Jaeger* explains, "[t]he failure to obtain a written consent to a potential conflict of interest ... in effect gives a wild card to each of the clients. At any time thereafter during the representation, any of the clients may play the wild card and require the withdrawal of the attorney (and the attorney's law firm) entirely from the case." *Id.* at 586.

Both as a matter of law and by examining the relevant facts here, it is clear that there was a potential conflict of interest at the outset of the City Attorney's Office and Christensen, Miller's representation of the City and Bugar and Hotard. Under the California Rule, a potential conflict of interest giving rise to the

obligation to obtain informed written consent exists whenever an attorney represents more than one client in the same lawsuit. *See Jaeger*, 213 B.R. at 584 ("California rules always require the informed written consent of each client before an attorney may jointly represent two or more clients in the same lawsuit."); *see also Zador*, 31 Cal.App.4th at 1295, 37 Cal.Rptr.2d at 759 ("[I]nformed consent is required before an attorney can jointly represent clients in the same matter.")

■ The circumstances of the instant action demonstrate that there were potential conflicts of interests at the instant the City Attorney's Office and Christensen, Miller accepted the representation of the City and Bugar and Hotard. The City and Bugar and Hotard are being sued by Tyisha Miller's parents as her survivors for claims arising out of the fatal shooting of her by certain City officers, including Bugar and Hotard.

For the period January to mid July 1999, while the City Attorney's Office and Christensen, Miller represented the City and Bugar and Hotard, Bugar and Hotard fully disclosed to those attorneys everything they knew about the shooting incident, their involvement and other officers' involvement including decisions, plans, tactics and actions they took individually or collectively. Further, they discussed with the City Attorney and Christensen, Miller legal strategies including possible defenses they and the other defendants, including the City, may adopt in defending the allegations against them in the FAC. These communications were the ultimate sharing of confidences by Bugar and Hotard with the City Attorney and Christensen, Miller.

The Court concludes that the reasons stated in the declarations and points and authorities regarding Bugar and Hotard's instant motion are sufficient to support a reasonable apprehension by them that the City's Attorneys—City Attorney and Christensen, Miller—contrary to their fiduciary duty of loyalty to them but by reason of a similar obligation of loyalty to the City may use such shared confidences to their detriment but to the benefit of the City.

Their specific concerns in part relate to the City, in defending itself against the Monell claims against it, will assert that Bugar and Hotard during the subject incident did not follow the City's policies and practices regarding use of force, including lethal force, as they were trained. In other words, the City's use of force policies, practices and training program did not cause constitutional harm to Tyisha Miller. It was Bugar and Hotard's failure to follow such that caused the harm. Further, in developing and pursuing such a defense, the City Attorney and Christensen, Miller, would use confidential information received from Bugar and Hotard during their meetings with them. Bugar and Hotard's defense will apparently be in part that their actions, plans and decisions regarding the subject incident including their use of force was consistent with their training or that the policies, practices and training they received from the City were inadequate to enable them to properly respond to the circumstances which they confronted that night.

This concern by Bugar and Hotard regarding the potential conflict of interest, of which they were not notified by the City Attorney or Christensen, Miller, is substantially supported by the fact that Christensen, Miller prepared a proposed motion to dismiss the complaint containing language to the effect that all the defendants including the City and Bugar and Hotard believed that the City police chief's decision that the employment of the five officers involved in the incident, including Bugar and Hotard, should be terminated by

reason of their conduct in developing an unreasonably dangerous plan during the incident, was "unfounded and incorrect." Bugar and Hotard present evidence demonstrating that Christensen, Miller, however, decided not to use that language because the City Attorney told the law firm that it could not take a position adverse to its chief of police or the City by asserting the chief's decision was wrong. (*See* Letter from Mr Ken Yuwiller to the City Attorney dated July 21, 1999, exhibit H to the declaration of Ms. Delores M. Giacometto, dated February 4, 2000, in support of the Bugar and Hotard motion to disqualify Christensen, Miller and the City Attorney's Office.)

Defendants respond that they offered to file two separate briefs, one for the City and one for the individual officers, including Bugar and Hotard, which in effect reflected different positions on whether the chief's decision was wrong. This approach does not dissuade the Court as to the existence of a potential conflict of interest. (*See* Declaration of Theresa J. Macellaro, February 16, 2000.) Rather, the fact that Christensen, Miller would even offer to write separate legal briefs taking opposing positions highlights the existence of the potential conflict of interest.

In the Court's view, the City Attorney and Christensen, Miller have and had a potential conflict of interest in jointly representing the City and Bugar and Hotard regarding the unreasonable use of force allegations found in the claims in the FAC pursuant to 42 USC § 1983 for violation of the Fourth Amendment and the state wrongful death claim based on assault and battery as well as other state law claims.[4]

Therefore, the moment the City Attorney's Office and Christensen, Miller embarked on multiple representation of the City and Bugar and Hotard, there existed potential conflicts of interest between the City and Bugar and Hotard giving rise to the attorneys' obligation to obtain the informed written consent of the City and Bugar to such joint representation before such representation began.[5]

## B. Laches—Alleged Lack of Delay in Bringing the Motion to Disqualify

■ If Bugar and Hotard delayed in bringing the instant motion to dismiss, it may be considered by the Court in determining whether to disqualify the City Attorney's Office and Christensen, Miller.

Motions to disqualify are often used as a tactical device to delay litigation. Where a party opposing the motion can demonstrate prima facie evidence of un-

---

**4.** Defendants' reliance on *Minneapolis Police Officers Fed'n v. City of Minneapolis,* 488 N.W.2d 817, 819 (Minn.Ct.App.1992) for the proposition that no conflict of interest exists between a city and an individual officer defendant when the city agrees to indemnify the officer is misplaced. The court in *Minneapolis Police Officers Fed'n* did not address whether informed consent was required for multiple representation, but rather whether an attorney was allowed under any circumstances to represent both the city and the individual officer. Accordingly, the court was concerned with whether there was an actual, rather than potential, conflict of interest between the clients. *See Minneapolis Police Officers Fed'n,* 488 N.W.2d at 819–820. The

analysis in *Minneapolis Police Officers Fed'n* actually supports this Court's conclusion relating to the existence of a potential conflict of interest. The court stated that the existence of an indemnification agreement, and resulting coincident financial interests, "substantially reduce[s]," but does not eliminate, "the possibility of conflict of interest."

**5.** Because the Court concludes the City Attorney's Office and Christensen, Miller represented multiple clients without their informed written consent while there were potential conflicts of interest, the Court need not address whether any actual conflict of interest exists.

reasonable delay in bringing the motion causing prejudice to the present client, disqualification should not be ordered. The burden then shifts back to the party seeking disqualification to justify the delay.

*Zador,* 31 Cal.App.4th at 1302, 37 Cal. Rptr.2d at 764. However, a disqualification motion should be denied only if the delay and ensuing prejudice are extreme. *See id.; see also Forrest et al. v. Baeza et al.,* 58 Cal.App.4th 65, 77, 67 Cal.Rptr.2d 857, 865 (1997) ("[T]he delay must be extreme in terms of time and consequence.") (citation and internal quotations omitted); *River West, Inc. et al. v. Nickel,* 188 Cal. App.3d 1297, 1309, 234 Cal.Rptr. 33 (1987) (describing the due to delay exception for denying disqualification as "narrow").

The *River West* court denied a motion to disqualify when the motion was filed more than three years after the client had knowledge of the potential conflict and after the attorney worked over 3,000 hours on the case and charged approximately $387,000. Comparatively, in *Earl Scheib, Inc. v. Superior Court,* 253 Cal.App.2d 703, 706, 61 Cal.Rptr. 386 (1967), the motion for disqualification was brought four months after the potential conflict became apparent. The lower court denied the motion as untimely, and the appellate court reversed, holding that a four month delay should not have precluded the lower court from considering the motion for disqualification.

■ Defendants argue that Bugar and Hotard knew or should have known from the day of the Tyisha Miller shooting that they were at risk of being terminated. However, the date that the Court must be concerned with is the date Bugar and Hotard actually became aware there was a potential conflict of interest between them and the City in defending against the suit filed by the Millers. Defendants fail to address when this occurred. From the evidence before the Court, the earliest mention in any document of any potential or actual conflict of interest between the individual officers and the City was in a letter dated July 21, 1999 sent by Silver, Hadden & Silver, the firm representing the officers in their employment related matters, to the City Attorney, a copy of which was sent to Bugar and Hotard.

Bugar and Hotard filed an application for a TRO regarding the disqualification of the City Attorney's Office and Christensen, Miller on January 24, 2000. Thus, at the most, Bugar and Hotard waited six months after they had knowledge of a potential conflict of interest. Six months is much closer to the four months which the *Earl Scheib* court found insufficient to deny the disqualification motion than to the three years plus which was considered inexcusable delay in *River West.* Furthermore, although the City asserts that thousands of attorney hours have been spent since January 1999, regarding this case, it makes no effort to estimate the number of attorney hours consumed *after* Bugar and Hotard had any actual knowledge of a potential conflict of interest. Therefore, the Court concludes that Defendants fail to demonstrate a prima facie case of inexcusable delay. Thus, the Bugar and Hotard have no burden to justify any delay. Accordingly, the Court will not deny Bugar and Hotard's motion for disqualification based on any delay in bringing the motion.

Accordingly, because neither the City Attorney's Office nor Christensen, Miller ever obtained the informed written consent of Bugar and Hotard when there was a potential conflict of interest prior to their representation of Bugar and Hotard, the Court will grant Bugar and Hotard's motion to disqualify the City Attorney's Office and Christensen, Miller from representing the City and Preece as defendants and

pursuant to a joint defense agreement between the City and Alagna and Stewart.[6]

## III.

## *DISPOSITION*

IT IS ORDERED THAT: the City Attorney's Office and Christensen, Miller are disqualified from representing any party in the defense of the civil lawsuit filed by the Millers or in any related cross or counterclaims.

---

6. Because the Court has adjudicated and will grant Bugar and Hotard's motion to disqualify, the Court need not address their motion for preliminary injunction requesting the same relief.