**Dena PALMER, Plaintiff–Appellant,**

v.

**PIONEER INN ASSOCIATES LTD., a Limited Partnership; Does I–X; Doe Entities A–Z, inclusive, Defendants–Appellees.**

No. 00–15397.

United States Court of Appeals,
Ninth Circuit.

Filed July 20, 2001

Before: GOODWIN, GRABER, and McKEOWN, Circuit Judges.

## CERTIFICATION ORDER

### ORDER

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we certify to the Nevada Supreme Court two questions of law that may be determinative of the matter pending before this court and as to which there is no clearly controlling precedent in the decisions of the Nevada Supreme Court.

### I. BACKGROUND

This case stems from an employment dispute. In February 1997, appellant Dena Palmer applied for work as a waitress at the Pioneer Inn Hotel and Casino in Reno, Nevada. She claims that one of the managers, Greg Zamora, told her that she would be hired, but that ultimately she was rejected because she was pregnant. Palmer's attorney informed Pioneer by letter dated February 27, 1997 that he intended to file the present action on behalf of his client.

In April 1997, George Kapetanakis, then an executive sous chef at the Pioneer, contacted Palmer's attorney, and signed an affidavit stating: "During the month of January, 1997, I witnesses [sic] Mr. Greg Zamora interviewing ... [Palmer].... I inquired of Mr. Zamora whether he intended to hire [her] at which time Mr. Zamora told me that he had already hired her." [1] Kapetanakis's job was a supervisory position that involved running the Pioneer's main kitchen. Palmer brought this action charging unlawful termination under 42 U.S.C. § 2000e, *et seq.*, and related state law violations, on July 9, 1997.

Pioneer moved to disqualify Palmer's counsel under Nevada Supreme Court Rule 182 on the basis, in part, of his *ex parte* contact with Kapetanakis. The district court found that Kapetanakis was a supervisor who had responsibility for interviewing and hiring cooks, dishwashers, and sous chefs, although not waitresses, servers, or restaurant supervisors. The court concluded that, "[b]ecause his job responsibilities included hiring employees, he was in a position to make statements concerning the hiring policies of Pioneer." *Palmer v. Pioneer,* 19 F.Supp.2d 1157, 1166 (D.Nev.1998). The court then held that counsel's contact with Kapetanakis constituted *ex parte* contact with a represented party under Nevada Supreme Court Rule 182, and it sanctioned counsel by excluding the affidavit obtained as a result of the *ex parte* contact. The court also awarded costs and fees to Pioneer in the amount of $2,800.

Before trial, the district court dismissed two of Palmer's claims on summary judgment; at trial, the jury found for Pioneer on the remainder of the claims. Palmer appealed the summary judgment, rulings at trial, and the order imposing sanctions. This request for certification concerns only the appeal of the order imposing sanctions for violations of Nevada Supreme Court Rule 182.

### II. DISCUSSION

Palmer argues that the district court abused its discretion by sanctioning her attorney for *ex parte* communication with Kapetanakis. Pioneer maintains that the *ex parte* contact was improper and that the sanctions were justified.

The United States District Court for the District of Nevada has, in Rule IA 10–7(a) of the Local Rules of Practice, incorporated the Model Rules of Professional Conduct as adopted and amended by the Nevada Supreme Court. Model Rule 4.2,

---

**1.** The content of this statement is not relevant to the district court's application of Nevada Supreme Court Rule 182, or to the court's decision to exclude the statement as a sanction. See *infra* note 4.

adopted as Nevada Supreme Court Rule 182, states, in relevant part:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Nev. SCR 182.

The Nevada Supreme Court, like most courts faced with the question, has analyzed *ex parte* contact with employees of represented corporations under the "managing-speaking" test. *See Cronin v. District Court,* 105 Nev. 635, 781 P.2d 1150, 1153 (1989). Under the managing-speaking test, *ex parte* interviews are barred for employees holding managerial positions giving them the authority to speak for and bind the corporation. *See, e.g., Wright v. Group Health Hosp.,* 103 Wash.2d 192, 691 P.2d 564, 569 (1984) (holding that nurses at hospital are not managing-speaking employees).

For additional guidance, *Cronin* examined the commentary to Model Rule 4.2, specifically Comment 2.[2] *See Cronin,* 781 P.2d at 1153. The Nevada Supreme Court noted that, "[a]lthough the preamble and comments to the Model Rules were not adopted by this court, those materials 'may be consulted for guidance in interpreting and applying the Nevada Rules of Professional Conduct, unless there is a conflict between the Nevada Rules and the preamble or comments.' SCR 150(2)." *Id.* The comment lists three categories of employees who are covered by the rule: (1) An employee "having managerial responsibility on behalf of the organization;" (2) an employee "whose act or omission in connection with the matter [in representation] may be imputed to the organization for purposes of civil or criminal liability;" and (3) an employee "whose statement may constitute an admission on the part of the organization." *Id.*[3]

The issue in *Cronin* was whether a hotel's top-level security managers were barred from *ex parte* interviews. The court looked to the commentary quoted above, and concluded that the mangers fell well within the first category—employees "having managerial responsibility on behalf of the organization." Thus, the court did not have occasion to interpret the scope of the third category, an employee "whose statement may constitute an admission on the part of the organization."

In the present case, the district court noted that the Nevada Supreme Court utilized the Model Rules commentary in *Cronin,* and accordingly the district court addressed all three categories. The court first concluded that Kapetanakis did not have sufficient managerial responsibility to fall under the first category ("having managerial responsibility on behalf of the organization"), and took no action bringing him under the second category (an employee "whose act or omission in connection with the matter [in representation] may be imputed to the organization for purposes of civil or criminal liability"). The court found, however, that he *could* make statements about Pioneer's hiring process that, if offered at trial, would be admissible as a

---

2. Model Rule 4.2 and its Comment were amended in 1995. Annotated Model Rules of Professional Conduct 580 (3d ed.1996). The "Comment 2" referred to in *Cronin* has now been moved to the fourth paragraph of the Comment. This order refers to it as Comment 2, as do the parties and the district court.

3. The newest proposed revisions to the Model Rules discuss the issue in comment [7], which omits the third category entirely. *See* Model Rules of Prof'l Conduct R. 4.2 cmt. [7] (Proposed Official Draft Nov. 2000), *available at* http://www.abanet.org/cpr/e2k-ru.e4.2.html.

party admission under FED. R. EVID. 801(d)(2)(D), and that his ability to make such admissions [4] for Pioneer placed him in the third category described in Rule 4.2 comment 2—an employee whose statement may constitute a "binding admission[ ] on the part of Pioneer." *Palmer*, 19 F.Supp.2d at 1166. Therefore, the district court concluded that Palmer's attorney was prohibited from *ex parte* contact with Kapetanakis under Nevada Supreme Court Rule 182.

The parties accept the district court's conclusion that Kapetanakis does not fall under the first or second category of the Rule 4.2 comment 2—that is, he does *not* "hav[e] managerial responsibility on behalf of the organization" and is *not* an employee "whose act or omission in connection with the matter [in representation] may be imputed to the organization for purposes of civil or criminal liability." Therefore, the question for the court is whether Kapetanakis is an employee "whose statement may constitute an admission on the part of the organization." Neither the Ninth Circuit nor the Nevada Supreme Court has published an opinion applying or explaining the third category. Courts appear to have interpreted it in at least two ways—from an evidentiary perspective and from an agency perspective.

Some courts view the "admission" reference as an analogy to FED. R. EVID. 801(d)(2)(D), the hearsay exception for party admissions. These courts reason that Model Rule 4.2 bars *ex parte* interviews with anyone who may make a statement that would be admissible against the corporate defendant as a party admission.[5] *See, e.g., Weeks v. Indep. School Dist.*, 230 F.3d 1201, 1210 (10th Cir.2000) (holding that a school employee is barred from *ex parte* contact under Model Rule 4.2 because his statement explains school procedures). In other words, these courts hold that if an employee, by virtue of the scope of his employment, is capable of saying something that would be admissible against the company under the party admission exception to the hearsay rule, the employee may not be contacted *ex parte*. Under this interpretation, the employee need not actually say anything that would be a party admission; he need only be *capable* of saying it. *See Palmer*, 19 F.Supp.2d at 1166 (noting witness's "ability" to make admission).

Alternatively, some courts apply the "admissions" commentary to Rule 4.2, but only as to admissions that legally bind the corporate defendant.[6] *See, e.g., Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990). This interpretation focuses less on what the employee might say (and the applicability of the hearsay exception), and more on the principles of agency law underlying the Rule—that is, whether the employee is the employer's alter ego. *See* HAZARD & HODES, § 4.2: 105 (discussing relationship of Rule to agency law).

---

**4.** Importantly, the district court did *Not* base its analysis on a conclusion that Kapetanakis's affidavit, supra p. 1000, was an admission under FED. R. EVID. 801(d)(2)(D)—but on the conclusion that, due to his job responsibilities, he was *capable of making a statement* that would be such an admission.

**5.** "The reference to persons whose statement may constitute an 'admission' on the part of an organization invites consideration of the modern law of hearsay evidence, as embodied in FED. R. EVID. 801(D)(2)(D) and state rules patterned after it." GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES, THE LAW OF LAWYERING, § 4.2:105 at 740 (1998 Supp.).

**6.** The district court in the present case does not appear to have considered this interpretation of the commentary. *See Palmer*, 19 F.Supp.2d at 1164 (stating that the third category in the commentary "is a reference to Rule 801(d)(2)(D) of the Federal Rules Evidence.").

The Restatement (Third) of Law Governing Lawyers has adopted this as its preferred interpretation:

> The test that best balances the competing interests, and incorporates the most desirable elements of the other approaches, is one that defines "party" to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's "alter egos") or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel. All other employees may be interviewed informally.

RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 100, cmt. e (1998) (quoting *Niesig*, 559 N.Y.S.2d 493, 558 N.E.2d at 1035). In adopting the agency approach, the Restatement rejected a hearsay-based application of the comment's "admissions" category: "The sweep of such a prohibition is extremely broad because under the evidence rules, any employee or agent can make an 'admission' and thus, presumably, would be beyond the limits of *ex parte* communication." *Id.*, Reporter's Note. This literal interpretation, the Restatement concluded, "would essentially mean that most employees and agents with relevant information would be within the anti-contact rule, contrary to the policies described in Comment b." RESTATEMENT § 100 cmt. c.

## III. QUESTIONS CERTIFIED TO THE NEVADA SUPREME COURT

The two questions that we certify to the Nevada Supreme Court are:

1. In applying Supreme Court Rule 182 to an employee of a represented corporation, does Nevada apply the portion of the commentary to Model Rule 4.2 barring ex parte contact with an employee "whose statement may constitute an admission on the part of the organization"?

2. If so, does Nevada interpret that portion of the commentary by analogy to FED. R. EVID. 801(d)(2)(D), by application of agency principles, or by a different analysis?

## IV. CONCLUSION

Palmer's appeal presents an issue of Nevada state law which will be determinative of one essential part of the parties' dispute and as to which there is no clearly controlling precedent of the Nevada Supreme Court. For this reason, we request that the Nevada Supreme Court accept and decide the questions herein certified. We agree to abide by the Nevada Supreme Court's decision as specified by Rule 5 of the Nevada Rules of Appellate Procedure, which states that "[t]he written opinion of the Supreme Court stating the law governing the questions certified ... shall be res judicata as to the parties."

IT IS SO ORDERED. Respectfully submitted, Alfred T. Goodwin, Senior Circuit Judge, Susan P. Graber and M. Margaret McKeown, Circuit Judges.

SUSAN P. GRABER Circuit Judge, United States Court of Appeals for the Ninth Circuit

### COUNSEL FOR APPELLANT AND RESPONDENT

The names and addresses of the counsel appearing in this action are as follows:

Counsel for plaintiff-appellant Dena Palmer:

Ian Silverberg, Esq.

Reno, NV

Counsel for defendant-appellee Pioneer Inn Associates, Ltd.:

Pat Lundvall

Miranda Du McDonald Carano Wilson McCune Bergin Frankovich & Hicks, LLP,

Reno, NV