**HARRY A., et al., Plaintiffs,**

v.

**Rick DUNCAN, et al., Defendants.**

**Powell County School, District, et al., Third Party Plaintiffs,**

v.

**Benjamin Frankforter, et al., Third Party Defendants.**

**Mountain West Farm Bureau Mutual Insurance Company, Intervenor.**

**No. CV–03–13–H–DWM.**

United States District Court, D. Montana, Helena Division.

July 30, 2004.

Mark E. Jones, Jones Law Office, Alan F. Blakley, Attorney at Law, Missoula, MT, Michele L. Earl–Hubbard, Miles Yanick, Alison P. Howard, Davis Wright Tremaine, Seattle, WA, Wright Noel, Davis Wright Tremaine, Bellevue, WA, for plaintiffs.

Lawrence F. Daly, Kathleen L. DeSoto, Candace C. Fetscher, Garlington, Lohn & Robinson, PLLP, Missoula, MT, for dependants/third-party plaintiffs.

Randall G. Nelson, Christie L. Hobbs, Nelson Law Firm, Billings, MT, Mark A. Vucurovich, Henningsen, Vucurovich & Richardson, for intervenors.

### ORDER ON PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND TO DISQUALIFY DEFENSE COUNSEL.

OSTBY, United States Magistrate Judge.

## I. INTRODUCTION

By Order dated July 17, 2004, Chief District Judge Donald W. Molloy referred this matter to the undersigned Magistrate Judge for the limited purpose of ruling on (1) Plaintiffs' motion for a protective order and to disqualify Garlington, Lohn and Robinson, P.L.L.P. ["GLR"], as defense

counsel, and (2) Defendants' motion for a protective order. Oral argument on these motions was heard on July 22, 2004. On July 27, 2004 the undersigned conducted a telephonic conference with counsel and ruled on both motions on the record. Also on July 27, the undersigned issued an Order memorializing the ruling on Defendants' motion for a protective order. This Order memorializes the ruling on Plaintiffs' combined motion for a protective order and to disqualify defense counsel.

In their motion, Plaintiffs seek the following relief: 1) that the Court disqualify GLR as defense counsel, and 2) that the Court grant Plaintiffs' counsel "unrestricted access to all former PCHS [Powell County High School] employees and all current non-managerial employees." *Pls.' Combined Mot. & Mem. [hereafter Pls. Mem.] at 20.* These issues are addressed below in that sequence.

## II. *FACTS*

This action, which was commenced on March 17, 2003, arises from allegations of surreptitious videotaping of persons in locker rooms at the Powell County High School. Plaintiffs are some of the students who believe they were videotaped, and parents of those student. Named Defendants include the Powell County School District ["District"], and five current or former employees of the District. The parties are well aware of the pertinent facts and procedural history, and therefore they are set forth below only where necessary to explain the Court's rulings.

## III. *ANALYSIS*

### A. *Motion to Disqualify*

In Plaintiffs' Memorandum filed on July 9, 2004, they allege that because GLR represents clients that will present directly contradictory testimony on key issues, GLR is engaging in a prohibited conflict of interest and should be disqualified from representing any of the Defendants or witnesses in this matter. *See Pls.' Mem.* at 2. For example, they contend: (1) Arlita Fenner and Jan Dougherty have offered testimony directly contrary to the positions of Joe Brott and the District in that they will testify that Brott did have actual or constructive knowledge of the videotaping at an earlier time than he admits *[Pls.' Mem. at 4–6]*; (2) Nancy Pembleton will present testimony that the District had earlier knowledge of the videotaping that will be in direct conflict with the testimony of Louise Thomas, Rick Duncan and Joe Brott *[Pls.' Mem. at 6–7]*, and (3) Jan Dougherty will also present testimony adverse to Joe Brott, wherein she will question his general veracity *[Pls.' Mem. at 7–8]*.

Before addressing the merits of this motion, the Court must note its concern regarding the delay in filing this motion. Plaintiffs have long been aware that GLR claims to represent many current and former employees of the District, including the employees referenced above. In a transcript of proceedings dated May 22, 2003, in a related state court case, Mr. Blakley advised the court that he was considering filing a motion to disqualify GLR, and Mr. Jones specifically explained that Plaintiffs' concern involved GLR's representation of Arlita Fenner and "all the employees of the district." *See Aff. of Daly, filed July 13, 2004, Exhibit D at 23. See also Declaration of Alan F. Blakley, filed July 9, 2004, Exhibit B (Minutes of state court proceeding of May 22, 2003).* Thus, Plaintiffs' counsel have been aware of these alleged conflicts for well over a year, but waited to make this motion until just weeks before the discovery deadline, and then filed their motion to disqualify along with approximately 85 deposition notices.

A party's delay in bringing a motion to disqualify may be considered by the Court in determining whether to disqualify opposing counsel. *See Miller v. Alagna,* 138 F.Supp.2d 1252, 1258–59 (C.D.Cal.2000). As the court in *Alagna* noted, motions to disqualify are often used as a tactical device to delay litigation. "Where a party opposing the motion can demonstrate prima facie evidence of unreasonable delay in bringing the motion causing prejudice to the present client, disqualification should not be ordered." *Id.* (applying California law). Here, it appears to the Court that there was unreasonable delay in bringing the motion and that disqualifying GLR at this late stage of the litigation would cause extreme prejudice to Defendants. Thus Plaintiffs must clearly show that disqualification is required.

The local rules of this Court state that the "standards of professional conduct of attorneys practicing in this Court shall include the American Bar Association's Model Rules of Professional Conduct and the Montana Rules of Professional Conduct." *L.R. 83.13.* The general rule governing conflicts of interest is Model Rule of Professional Conduct 1.7, which states:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Model Rule of Professional Conduct 1.7.[1]

 The Court concludes that GLR does claim to represent clients when that representation involves a concurrent conflict of interest because there is a significant risk that representation of one or more of these clients will be adverse to or materially limited by GLR's responsibilities to other clients.[2] No argument made by defense counsel either in their briefs or at the hearing overcomes the apparent conflicts of interests that arise in this case. Defense counsel represents the District, and they also represent individuals who will proffer relevant testimony damaging to the District's defenses in this case.

The controlling question, however, is whether these conflicts are waivable. Based on Model Rule 1.7(b), and the fact that there are no apparent conflicts among

---

**1.** Montana Rule of Professional Conduct 1.7 is identical to the Model Rule.

**2.** "[A] directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit." *See Annotated Model Rules of Professional Conduct, 5th Ed., Rule 1.7, Comment [6].*

those who are named parties in this action, the Court concludes that GLR need not be disqualified, provided that each of the four requirements of Model Rule 1.7(b) are satisfied.

Under the first requirement, GLR must reasonably .believe that it will be able to provide competent and diligent representation to each affected client. They have made this representation to the Court both in their briefs and at the hearing. The second requirement is satisfied because the representation is not prohibited by law. The third requirement is satisfied because, as noted above, the representation does not involve the assertion of a claim by one GLR client against another GLR client. According to the fourth requirement, however, each affected client must give "informed consent, confirmed in writing." Model Rule 1.7(b)(4). The writing is required "to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing." *Annotated Model Rules of Professional Conduct, 5th Ed., Rule 1.7, Comment [20]*. At the time of the hearing, defense counsel represented that some oral consents had been obtained, but no written consents.

Accordingly, defense counsel, with all due haste, must obtain fully informed written consents from both the District and from any clients whose representation involves a concurrent actual or potential conflict of interest. If defense counsel is unable to obtain this fully informed written consent, they must immediately so advise the Court and must withdraw from any representation not permitted by Model Rule 1.7.

**B.** ***Plaintiffs' Motion for Protective Order***

In their motion for protective order, Plaintiffs complain that GLR, as counsel for Defendants, purports to represent all current and former employees of PCHS, although many of those employees have not requested GLR's representation. Plaintiffs seek an order allowing them access to these non-party witnesses without coordinating that access through GLR. *See Pls.' Mem. at 2.* Plaintiffs contend that defense counsel do not represent all employees of the school district *[Id. at. 2–4, 16–18]* and that doing so would raise conflicts of interests. *Id. at 2–8.* Further, Plaintiffs argue that their counsel are authorized to contact all former school district employees and all current employees that do not serve a managerial or supervisory role. *Id. at 19–20.* Defense counsel argues that Plaintiffs' counsel may not contact any school district employee *ex parte* because Model Rule of Professional Conduct 4.2 prohibits Plaintiffs' counsel from doing so. *Defs.' Mem. at 15–19.*

Model Rule 4.2 states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

This rule must be construed both as it applies to GLR's representation of the District as an organization and also as to GLR's representation of the employees of the District as individuals. These issues are addressed in turn below.

This Court has had occasion in the past to address the issue of *ex parte* contact with employees of an organizational defendant. In *Porter, v. Arco Metals Co.,* 642 F.Supp. 1116 (D.Mont.1986), Judge Lovell held:

The Court ... concludes that plaintiff's *ex parte* conduct is prohibited neither by Rule 4.2 nor by the attorney-client privilege, so long a plaintiff does not attempt

to interview present or former employees with managerial responsibilities concerning the matter in litigation, and does not inquire into privileged areas of communication.

*Id.* at 1118.

The Court finds that this holding is consistent with more recent authorities. In *Palmer v. Pioneer Inn Assoc., Ltd.,* 257 F.3d 999, 1003 (9th Cir.2001)(applying Nevada law), the Ninth Circuit relied on the Restatement (Third) of Law Governing Lawyers. Section 99 of the Restatement reads:

(1) A lawyer representing a client in a matter may not communicate about the subject of the representation with a nonclient whom the lawyer knows to be represented in the matter by another lawyer or with a representative of an organizational nonclient so represented as defined in § 100, unless:

(a) the communication is with a public officer or agency to the extent stated in § 101;

(b) the lawyer is a party and represents no other client in the matter;

(c) the communication is authorized by law;

(d) the communication reasonably responds to an emergency; or

(e) the other lawyer consents.

Neither party has argued that any of the exceptions found in subsections (a) through (e) are satisfied.

The Restatement makes clear that the proscriptions of section 99 apply in litigation against a governmental agency:

In negotiations or litigation by a lawyer of a specific claim of a client against a governmental agency or a governmental officer in the officer's official capacity, the prohibition stated in § 99 applies,

except that the lawyer may contact any officer of the government if permitted by the agency or with respect to an issue of general policy.

Restatement § 101(2).[3] Neither of the exceptions in the foregoing section would permit *ex parte* contact with the District here because defense counsel has not permitted Plaintiffs' counsel to contact employees or agents of the District, and no issues concerning general public policy have been raised.

Section 100 of the Restatement defines "represented nonclients" as follows:

Within the meaning of § 99, a represented nonclient includes:

(1) a natural person represented by a lawyer; and

(2) a current employee or other agent of an organization represented by a lawyer:

(a) if the employee or other agent supervises, directs, or regularly consults with the lawyer concerning the matter or if the agent has power to compromise or settle the matter;

(b) if the acts or omissions of the employee or other agent may be imputed to the organization for purposes of civil or criminal liability in the matter; or

(c) if the statement of the employee or other agent, under applicable rules of evidence, would have the effect of binding the organization with respect to proof of the matter.

Restatement § 100. Comment b to Section 100 provides guidance applicable to the interpretation of Section 100(2) respecting organizational clients:

[C]ertain employees and perhaps other persons are properly regarded as non-

---

**3.** In this Order, all citations to the Restatement are citations to the Restatement (Third) of Law Governing Lawyers.

clients who may not be contacted under § 99. The definition of Subsection (2) applies whether or not the employee or other representative is personally represented by counsel for the organization.... A very broad definition of such persons, for example one including all present and former employees, would be easily administered but at an unacceptably high cost. Under such a rule, the organization's lawyer (as permitted under § 99 & Comment *j* thereto) could deny permission for the inquiring lawyer to speak to any employee. The opposing party would thus be required to resort to the burdensome process of filing suit (based on less information than would otherwise be available) and obtaining discovery to gain access to relevant information. Moreover, employees may be unwilling to speak as freely or candidly at a deposition in the presence of the lawyers for their employer as in an informal, pretrial interview. There is no justification for permitting one party thus to control entirely the flow of information to opposing parties. Such control is not available to an individual party, whose friends and colleagues may be approached without infringing the rule. The anti-contact rule stated in the Section reflects a balance among the considerations pertinent to the anti-contact rule (see § 99, Comment *b* ).

Restatement § 100 cmt. b.

This comment is consistent with Comment 2 to Model Rule 4.2. That comment lists three categories of employees who are covered by the "anti-contact" rule: 1) an employee "having managerial responsibility on behalf of the organization;" 2) an employee "whose act or omission in connection with matter [in representation] may be imputed to the organization for purposes of civil or criminal liability;" and 3) an employee "whose statement may constitute an admission on the part of the organization." *Id.* at 1001.[4]

In *Palmer, supra,* the Ninth Circuit considered whether the third category of employees under comment 2 to Model Code of Professional Conduct Rule 4.2 (analogous to Restatement § 100(2)(c)) prohibits opposing counsel from contacting *ex parte* only employees who have authority to make admissions that bind their organization, or whether opposing counsel may not

---

4. At the hearing, defense counsel contended that, pursuant to Mont.Code Ann. § 2–9–305, they represent all employees and agents of the school district. This argument is flawed in a number of ways. Mont.Code Ann. § 2–9–305 states in pertinent part:

(1) It is the purpose of this section to provide for the *immunization, defense,* and *indemnification* of public officers and employees civilly sued for their actions taken within the course and scope of their employment.

(2) In any noncriminal action brought against an employee of a state, county, city, town, or other governmental entity for a negligent act, error, or omission, including alleged violations of civil rights pursuant to 42 U.S.C.1983, or other actionable conduct of the employee committed while acting within the course or scope of the employee's office or employment, the governmental entity employer, except as provided in subsection (6), shall defend the action on behalf of the employee and indemnify the employee.

For example, subsection (1) refers to employees "civilly sued". Subsection (2) refers to actions brought "against an employee". Many of the individuals that defense counsel claims to represent are not named in this suit. The Court has found no case in which the Montana Supreme Court required that an employee not named in a suit be protected by Mont.Code Ann. § 2–9–305. Second, the statute states that an employee must be immunized, defended, and indemnified. The statute does not state that the same counsel that represents a government entity must also represent individual employees. Third, the statute does not require that those employees who opt out of being represented by District counsel must necessarily pay for their own representation.

contact *ex parte* any employee whose statement adverse to the organization can be admitted under the Rules of Evidence. *Id.* at 1002–03. The Ninth Circuit phrased the issue as whether the definition of an employee "whose statement may constitute an admission on the part of the organization" is governed by the Rules of Evidence or the law of agency.

The Circuit Court wrote:

The Restatement (Third) of Law Governing Lawyers has adopted [the agency test] as its preferred interpretation:

"The test that best balances the competing interests, and incorporates the most desirable elements of the other approaches, is one that defines 'party' to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's 'alter egos') or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel. All other employees may be interviewed informally." Restatement (Third) of Law Governing Lawyers § 100 cmt. e (1998) (quoting *Niesig v. Team I*, 559 N.Y.S.2d 493, 558 N.E.2d at 1035). In adopting the agency approach, the Restatement rejected a hearsay-based application of the comment's "admissions" category: "The sweep of such a prohibition is extremely broad because under the evidence rules, any employee or agent can make an 'admission' and thus, presumably, would be beyond the limits of ex parte communication." *Id.*, Reporter's Note. This literal interpretation, the Restatement concluded, "would essentially mean that most employees and agents with relevant information would be within the anti-contact rule, contrary to the policies described in Comment b." RESTATEMENT § 100 cmt. c.

*Palmer*, 257 F.3d at 1003. Having identified this issue, the court certified the issue to the Nevada Supreme Court. *Id.*

Upon certification, the Nevada Supreme Court adopted the managing-speaking agent test. *Palmer v. Pioneer In Assoc., Ltd.*, 118 Nev. 943, 59 P.3d 1237, 1247 (2002). It ruled that the anti-contact rule applied only to employees whose admissions could bind the organization during the course of litigation. *Id.*

This Court concurs with the rule set forth by the Nevada Supreme Court and the Restatement § 100 cmt. c and e. Again, Restatement § 100(2) defines a represented organizational nonclient as an employee or other agent of an organization represented by a lawyer: (a) who supervises, directs, or regularly consults with the lawyer concerning the matter or has power to compromise or settle the matter, (b) whose acts or omissions may be imputed to the organization for purposes of civil or criminal liability in the matter, or (c) whose statement, under applicable rules of evidence, would have the effect of binding the organization with respect to proof of the matter. Restatement § 100(2). If the third subsection were interpreted to mean any employee whose statement adverse to the organization's case could be admitted as an exception to the hearsay rule, most every (if not every) employee or agent would fall under category c. Category c would subsume Section 100(2) and would render subsections a and b unnecessary. This interpretation is consistent with the District of Montana's decision in *Porter, supra.*

The Reporter's Note to comment g of Restatement § 100 recognizes a split in authority whether the anti-contact rule extends to former employees. The Reporter's Note states that, subsequent to *Public Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Serv., Ltd.*, 745 F.Supp. 1037

(D.N.J.1990), "apparently every reported decision has refused to extend the anti-contact rule to former employees on the basis of the former relationship alone." Restatement § 100 rept. note cmt. g (citations omitted). However, the Reporter's Note does cite *Porter,* decided four years prior to *Public Service* as a case that applies the anti-contact rule to former employees. *Id.* Indeed, the District of Montana case does prohibit *ex parte* contact with former employees who had managerial responsibilities concerning the matter in litigation. *Porter,* 642 F.Supp. at 1118.

Although the authority on this issue is split, it is the law of this district, and not the Restatement, that provides precedent binding on this Court. This Court must follow *Porter.* Therefore, the anti-contact rule applies to former as well as current District managerial employees.

Defense counsel seeks to avoid the *Porter* result by contending that they also represent individually all persons who were employees of the District during the relevant time period. *See Declaration of Wright Noel, filed July 9, 2004, Exhibit C (June 22, 2004, letter from GLR to Plaintiffs' counsel stating GLR "represents PCHS and each of its employees in matters involving the security breach").* GLR bases its claimed representation of all employees on unilateral notice to the employees. In their letter to Plaintiffs' counsel, GLR explained: "Notice of that representation was given in writing to each employee, and no such employee has ever severed or modified that representation." *Id.* An undated memo to "employees of PCHS" advised: "Garlington, Lohn & Robinson, PLLP, a Missoula law firm, has been retained to represent the school and its employees in these matter (*sic*). .... This is to assure you that, in addition to representing the school itself, the attorneys named below represent each of you and will defend your interests to the extent plaintiffs involve you in this matter, either as a witness or a party." The memo further advised that the employees could hire a "private attorney" at their own expense if they wished.

■ The Court concludes that an attorney-client relationship cannot be created unilaterally by the attorney or by the person's employer. An attorney-client relationship arises when:

(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person, and either

 (a) the lawyer manifests to the person consent to do so; or

 (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or

(2) a tribunal with the power to do so appoints the lawyer to provide the services.

Restatement § 14. Comment f to that section further explains:

Whether the lawyer is to represent the organization, a person or entity associated with it, or more than one such persons and entities is a question of fact to be determined based on the reasonable expectations in the circumstances (see Subsection (1)). Where appropriate, due consideration should be given to the unreasonableness of a claimed expectation of entering a into a co-client status when a significant and readily apparent conflict of interest exists between the organization or other client and the associated person or entity claimed to be a co-client (see § 131).

Restatement § 14 cmt. f.

■ Pursuant to the basic contract law, as applied in this context by the Restate-

ment § 14, the District's blanket letter to employees is insufficient by itself to create attorney-client relationships with all those employees. To form an attorney-client relationship, a prospective client must manifest to the lawyer the intent to be represented. Restatement § 14(1). The memorandum placed upon employees an obligation to "opt-out" if they did not wish GLR to represent them. As a matter of law, however, the decision not to respond for the purpose of opting out does not constitute a manifestation to enter into a fiduciary or contractual relationship. Consent to enter into a contract must be "free, mutual, and communicated by each party to the other." *Royal Ins. Co. v. Roadarmel,* 301 Mont. 508, 11 P.3d 105, 109 (2000); *Interstate Prod. Credit Ass'n v. Abbott,* 223 Mont. 405, 726 P.2d 824, 826 (1986).

In addition, whether an attorney-client relationship exists is a question of fact, and the inquiry involves whether entering a into a co-client status is reasonable in light of any conflicts of interest between the organization and the employee or agent. Restatement § 14 cmt. f. As is demonstrated in Plaintiffs' Memorandum at 4–8, it is possible that these employees might possess information that could potentially damage Defendants' case. Such possible conflicts weigh against finding an attorney-client relationship between defense counsel and District employees who have not consented to that representation and with whom defense counsel has not even spoken.

Based on the foregoing, the Court concludes that Plaintiffs' counsel may interview former and current employees and agents of the school district *ex parte* so long as (1) those employees are not supervisory or managerial employees, and (2) those employees have not manifested an intent to be represented by counsel.

**Accordingly,**

As stated in the ruling made at the July 27, 2004, telephonic conference, and for the reasons set forth herein, **IT IS ORDERED:**

(1) Plaintiffs' motion to disqualify GLR as defense counsel (Court's Doc. No. 246) is **DENIED.** However, GLR, with all due haste, shall obtain fully informed written consents from both the District and from any clients whose representation involves a concurrent actual or potential conflict of interest. If GLR is unable to obtain these fully informed written consents, they must immediately so advise the Court and must withdraw from any representation not permitted by Model Rule 1.7.

(2) Plaintiffs' motion for protective order (Court's.Doc. No. 246) is **GRANTED IN PART** and **DENIED IN PART.** Plaintiffs' counsel may engage in *ex parte* contact with current and former non-managerial employees of Powell County High School, provided said employees have not manifested an intent to be represented by counsel. Plaintiffs' counsel shall not inquire into privileged information with any current or former employee.

3) On or before Friday, July 30, 2004, GLR shall provide to Plaintiffs a list of clients who have requested their representation in this matter. Should GLR enter into attorney-client relationships with any additional individuals related to this matter, they shall notify Plaintiffs' counsel immediately.

The Clerk of Court is directed to notify the parties by facsimile and mail of the making of this Order.